## F. B. MYERS ET AL. v. KINGSTON COAL CO.

ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 17, 1889—Decided May 27, 1889.
[To be reported.]

1. Where, upon the whole case, a trial judge conceives it to be his duty to give the jury binding instructions, the answers to points become mere dissertations on the law, useless to the jury, burdensome to the judge, and complicating to the record, and the better practice is to decline the answers as unnecessary.

2. The conclusive effect of a former adjudication depends, not upon the identity of the evidence adduced, or of the arguments presented, but upon the identity of the rights involved; and a point which might have been made upon the former trial, is concluded by the judgment therein, whether actually made or not.

3. The constitutionality of a special act authorizing a lease of a minor's coal-lands, and the regularity of the execution of the lease under it, is immaterial, when the minor, with full knowledge of what had been done in his name, for many years after his majority ratified and confirmed the lease by a continuous reception of the rents accruing under it.

4. A lease of coal-lands upon a fixed royalty payable by the lessee whether a certain quantity of coal per annum be mined or not, for a certain

period " and for such other and longer time as the lessee shall continue to pay the rent, as named in this instrument," is not invalid by reason of uncertainty in the term.

5. Counsel may call for a statement of the purpose for which a paper is offered in evidence, but how formally, or in how much detail, the purpose must be stated, is a matter within the discretion of the trial judge : unlike a witness offered, a paper may be self-explanatory, and of itself apply directly to the issue involved.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

No. 423 January Term 1889, Sup. Ct.; court below, No. 622 October Term 1885, C. P.

On August 22, 1885, Frederick Benham Myers, and William Penn Myers brought ejectment against the Kingston Coal Company to recover interests in certain coal lands.   The defendant pleaded, not guilty, and subsequently, " former recovery and that the matter in controversy has been adjudicated."

At the trial on March 13, 1888, it was made to appear as follows:

Madison F. Myers died August 2, 1859, leaving a widow, Harriet, and five children, Miranda M., Philip T., Martha A., Frederick B., and William P. Myers.   The last three children were minors, of the ages of about 18, 14 and 11 years, respectively.   By his last will, duly admitted to probate, Madison F. Myers gave to his wife, Harriet, the sole and absolute control of all his property, real and personal, until his youngest child should become of age, to have and to hold for the benefit of all his children.   His real estate consisted of an undivided one half interest in 86 acres of land, and of the whole interest in some four acres adjoining, his wife Harriet being the owner of the other one half interest in the larger tract.

After the death of Mr. Myers, it was discovered that the said lands were underlaid with a valuable vein of coal, and early in 1864, Philip T. Myers, the eldest son, negotiated a lease thereof, to be executed by the widow and all parties in interest, including the guardians of the minor children, to Isaac S. Waterman, Thomas Beaver and David Morgan.   Being in doubt as to the right of the guardians to join in the execution of the lease, the parties procured the passage of a special statute, act of April 15, 1864, P. L. 433, which author-

ized and empowered the guardians " to sell and dispose," at public or private sale, all the estate, etc., of said minors in any lands, etc., in Luzerne county, and " to demise, lease and to mine-let any coal or other mines in or under " the same, etc., etc. Whereupon a lease was executed, dated May 4, 1864, for a fixed royalty per ton of coal mined, payable whether a certain quantity per annum were mined or not, demising the lands to the lessees or " their heirs, executors, administrators and assigns, from the first day of this present month for the term and period of twenty years, and for such other and longer time as the parties of the second part and their legal representatives shall continue to pay the rent as named in this instrument, unless the term is sooner ended by non-payment of rent as hereinafter provided for." The lease was afterwards assigned to the Kingston Coal Company.

Frederick B. Myers became of age June 10, 1866 ; William P. Myers, September 5, 1868. They then received the accumulated coal rents from their guardians and afterwards the rents regularly as they accrued from the lessees, until in 1881 when they repudiated the lease, gave notice that they would no longer be bound by it, and filed a bill in equity against the Kingston Coal Co., to No. 8 September Term 1881, praying that upon the facts therein averred the said lease be declared void and of no effect and that the defendant be compelled by decree to surrender the same to be canceled. An answer being filed, the cause proceeded to a final decree by the court below dismissing the bill at the cost of the plaintiffs, which decree upon appeal to the Supreme Court, to No. 460 January Term 1885, was affirmed ; unreported. By this time, twenty years from the date of the lease had expired, and the plaintiffs demanded possession of the demised premises which was refused, when this ejectment was brought.

In the course of the trial, the plaintiffs showed title and rested. The defendant then offered in evidence the act of April 15, 1864, P. L. 433, to show the authority by which the lease under which the defendant claimed was executed.

Objected to by the plaintiffs, on the ground that the act was unconstitutional and void ; that it was an attempt by the legislature arbitrarily to take rights vested in the plaintiffs and transfer them to others ; that it was in violation of amendment

XIV. of the constitution of the United States; and further, that it was an usurpation by the legislature of the judicial function.

By the court:

We regard the judgment of the Supreme Court affirming the decree of this court in the case of Myers' Appeal, as adjudicating that this act of assembly is constitutional; and that adjudication is binding upon us. The objections are overruled, the evidence admitted; exception.[1]

The defendant offered the lease dated May 4, 1864, in evidence.

Objected to by plaintiffs, because: 1. It was not the lease of the plaintiffs. 2. The guardians had no power and were never duly authorized to make a lease transferring plaintiffs' property, for a period after they became of age. 3. The lease was not duly executed according to the provisions of the act. 4. The defendant had not shown the preliminary steps necessary to authorize the guardians to execute any lease whatever.

By the court: Objections overruled, the lease admitted; exception.[3]

Plaintiffs made the further objection to the admission of the lease, that it had not been shown that it was made with the guardians upon the same terms as with the other lessors, as required by the act.

By the court: All the parties having joined in the lease, it is prima facie evidence that the interests of the plaintiffs were leased upon the same terms as the interests of the other parties; objection overruled, evidence admitted; exception.[4]

Mr. Ricketts, to defendant's counsel: For what purpose do you present this lease?

Mr. Palmer: If the lease does not show for itself, we cannot make it more plain.

By the court: We think the paper shows for itself and is sufficient of what it is offered for, in connection with the admission that the defendant is entitled to all the rights and privileges of lessees; exception.[5]

Mr. Ricketts: I object then to this lease, for the reason that on its face it is merely a lease for twenty years, which expired prior to the time of bringing this suit, and that all the rights of defendant thereunder ceased, on the face of the lease, prior to the bringing of this suit.

By the court: Objection overruled, exception.[6]

In their rebuttal case the plaintiffs, in order to show conspiracy to defraud, entered into between David Morgan and the other original lessees with Philip T. Myers, in the making of the lease put in evidence by the defendant, and, also, to show that the lease was not made with the guardians of the plaintiffs on the same terms and conditions as were made with the other lessors, the lessees having paid Philip T. Myers $4,000 more than was paid to said guardians, offered to read the examination of a number of witnesses taken on the hearing before the master in the proceeding by bill in equity to No. 8 September Term 1881.

Objected to by the defendant, on the ground (1) that the facts, sought to be established by the testimony offered, were introduced in evidence in the prior litigation before referred to, in which the validity of the lease under which the defendants now claim was in controversy and was attacked, and that in that litigation the lease was declared by a court of competent jurisdiction to be valid and binding. (2) That the contention sought to be raised by the testimony offered, has already been adjudicated.

By the court: Objection overruled, testimony admitted, exception to defendant.

In its sur-rebuttal, the defendant read the testimony of others of the witnesses examined in the equity proceeding upon the question of the payment of $4,000 to Philip T. Myers, and closed by putting in evidence the entire record in the equity proceeding.

The court, RICE, P. J., charged the jury as follows:

This is an action of ejectment brought by the plaintiffs to recover the possession of certain land in Kingston, to which they claim they not only have the title but the right of possession. The defendants claim that the title and the right of possession is in them. Plaintiffs opened their case by putting in evidence the admission that the title was originally in Madison F. Myers as to a portion of the land, and in Harriet Myers as to the other portion; that Madison F. Myers died leaving a will, and that the interests claimed by the plaintiffs were devised by him to them. This testimony made out a prima

facie case for them, and if there had been nothing else in the case, would have entitled them to recover. As a defence to this, the defendants put in evidence an act of assembly passed in April, 1864, which expressly provided that the guardians of these two plaintiffs, who were then minors, should have power to sell and dispose of, from time to time, at public or private sale, in such parcels and upon such terms as they or any guardian thereafter appointed for them, might think proper, all the estate, right, title and interest in the said minors, or either of them, in any lands, tenements and hereditaments, situate in the said county of Luzerne, and to demise, lease or mine-let any coal or other minerals in or under such lands, tenements and hereditaments in which said minors had an undivided interest, for such price, or prices, or terms, and upon such rents, as the other owners of the said real estate shall sell or lease at, and to join with the other parties owning the remaining undivided interest in the same, in the execution, acknowledgment and delivery to the purchaser or purchasers, lessee or lessees, of good and sufficient deeds of conveyance in fee simple, or lease for years for the same; and all such deed or deeds of conveyance, or lease, shall be good and effectual, etc.

Pursuant to this act of assembly, these guardians joined in a lease with the other parties, which is dated May 4, 1864, and which was acknowledged May 7, May 10 and May 12 of the same year, of this land, to Waterman and Beaver and Morgan; and it is admitted that the rights of Waterman and Beaver and Morgan have passed to this defendant. This lease was to the lessees, their heirs and assigns. It was of all the coal; it was for a period of twenty years, and so long as the lessees shall continue to pay the rent. This is the title on which the defendants defend their possession.

The objections which the plaintiffs make to this title, as being insufficient to sustain the defendant in its possession are, first, that this act of assembly was unconstitutional; second, that the conditions of the act of assembly upon which these guardians were to exercise the powers committed to them, were not literally complied with; and, specifically, they claim, that the bond which the act of assembly calls for was not given until after the execution of the lease; thirdly, they contend that if this was a lease, then it is void beyond the term of twenty

years, because indefinite as to the term ; fourthly, they contend that if it was in reality a sale of the coal in place, it is void because the guardians have not the power to sell.

With regard to the first objection, that against the constitutionality of the act, we have to say that that question, as we understand it, was decided by this court in the case of Meyers' Appeal, and that judgment was affirmed by the Supreme Court of this state. Our opinion upon that question has not changed ; and even if it had, we would still be bound by the decision of the Supreme Court until that is overruled. With regard to the second objection, the object of the bond was to insure the faithful application of the rents that might accrue from the lease, and being executed before any rents had accrued under the lease, we think it was a substantial compliance with the act of assembly, and that the objection upon that ground is not tenable. With regard to the third and fourth objections to this evidence of the defendants' title, we say that the construction of the act under which this lease was made, is for the court. [We are at present of opinion that in the use of the terms, lease, and, demise, the legislature intended them, not in their strict technical sense, but in the sense in which they were understood when applied to any transfer of an interest or right in coal in place. Strictly and technically, this was not a lease, but a sale of the coal in place. But whatever it was, it was a form of conveyance, then as now, commonly known as a lease, and by any fair construction of the act must be held to have been within the power of the guardians to make. For, while this act of assembly must be construed strictly, that does not imply that an unfriendly construction shall be given to it, so as to defeat the very purpose which was had in view when it was passed. Furthermore, the guardians were by the act of assembly given the power to sell all the estate, right, title, etc., of the minors, not merely in the surface but in the land. This would include the power to sell the coal separately, or to demise it by perpetual lease, or its equivalent. If there had been simply given the power to sell, there might have arisen the question whether or not the guardians would have the right to lease the coal, and it was probably in order to remove any doubt upon that question that there was, in addition, given the power to lease the coal. Therefore, the power to lease, techni-

cally speaking, although expressly given, did not impair their right to sell, given in the preceding clause of the act; so that if the case rested here, the defendant's defence would be complete and perfect under this lease pursuant to the act of assembly.] [8]

But in rebuttal of this defence, the plaintiffs set up two grounds upon which they claim the defence is not a good one. In the first place, they contend that there was a conspiracy to defraud the other heirs, entered into between Philip T. Myers, one of the co-owners with the plaintiffs, and David Morgan, one of the lessees, whereby the former was to get a larger sum for his interest than the others were to get for theirs. In other words the plaintiffs undertake to show that this lease is void as to these plaintiffs because of this fraud in fact, actual fraud. We speak of it thus, as distinguished from legal fraud, which we shall consider hereafter. Whether the result in the preceding case in equity, was a conclusive adjudication of this question or not, we take it that the court, now as then, is compelled to say whether or not there is sufficient evidence of actual fraud to vitiate or invalidate this lease. This is the duty of the court sitting here in the trial of an action which has many features of a proceeding in equity. [If there is not sufficient evidence of actual fraud to warrant the court in decreeing a cancellation or rescission of that lease, then there would not be sufficient evidence of fraud to warrant a recovery against the defendants as against that lease. In the case to which we have referred, this question of fraud came up before this court and before the Supreme Court. And whether or not that question was fairly raised by the pleadings, there was nevertheless an expression of opinion by the court in that case which is in our opinion to be followed in this case. It was there held that there was not sufficient evidence of actual fraud to warrant a cancellation of the lease; and if there was not sufficient evidence there, then, clearly, the same evidence would not justify a recovery against the defendants upon the grounds of actual fraud as against this lease.] [11]

But the act of assembly to which we have referred, expressly provides that in any lease which is to be made, the guardians shall let the interests of their wards for such price or prices or term or terms, and upon such rents, as the other owners of the

said real estate shall sell or lease it; and it is contended that this lease was not executed so far as the interest of these plaintiffs were concerned, by the guardians, upon the same price or prices and upon the same rent as the interest of Philip T. Myers was leased upon. And there is testimony here to show, and I believe that testimony, so far as this particular fact is concerned, is uncontradicted, that before the lease was executed by Philip T. Myers, he was paid $4,000, extra, as a bonus. There was considerable testimony in explanation of why it was paid. We are nevertheless of opinion that this payment by the lessees to Philip T. Myers, of this $4,000, would be in violation of this act of assembly to which we have called your attention, and we will repeat in this connection what we said in the other case upon that subject : 

" Where, by special law, the authority is given to the guardians of a minor to sell or lease his coal lands, and the conditions or terms upon which the power is to be exercised are not made subject to the supervision of the court, but are expressly prescribed in the act itself, a strict compliance therewith is required. In the act in question, the power given to the guardian was, to sell or lease for such price or terms, and upon such rents as the other owners of the said real estate shall sell or lease at. The other owners were the plaintiffs' mother and their brother and sisters, who were of full age. The purpose of the provision which directed that the guardians, whether selling or leasing, should do so upon equal terms with these other owners, was a very wise one. Strictly and faithfully carried out, that condition was likely to secure to the minors a full consideration for their interests. Can it be possible that that essential clause is simply directory, and not intended to limit the authority conferred upon the guardians, or that it can be evaded or rendered nugatory by so simple a device as a collateral and perhaps secret agreement between the lessee or purchaser, and one or more of the adult co-tenants, to give him or them an additional sum for joining in the lease ? We think not. Under that view of the facts of this case, best sustained by the evidence, and, indeed, most favorable to the defendant, the sum of $4,000 paid to Philip T. Myers, was virtually part of the consideration for his finally joining in the lease, although demanded by him in violation of his previous agreement, and

paid to him by the lessees under the pressure of these circumstances in which they had placed themselves acting on the faith of that agreement. But these peculiar circumstances and the honesty of the motives of the lessees were matters which did not concern the plaintiffs, or the authority of their guardians, for they were bound by no previous agreement. The question virtually affecting the validity of the guardians' action is: What were the terms finally agreed upon by the other owners? If, when the lease came to be executed, the defendants were from any cause induced to pay to one of the adult owners an extra sum as a consideration for his joining in the lease, they thereby fixed the standard below which the guardians were not authorized to fall, in stipulating for the rent or sum to be paid for the interest of their wards."

So that if the case rested here we would be compelled to say that this lease was invalid at the time of its execution ; because the lessees paid to Philip T. Myers, one of the other owners, $4,000 more for his interest than the other owners received.

But in answer to this the defendants contend, that after the plaintiffs became of age they ratified or affirmed the lease by the receipt of rents and other unequivocal acts. The evidence shows that F. B. Myers became of age on June 10, 1866, and that W. P. Myers became of age on September 5, 1868. The evidence is uncontradicted that for a long period of years they received the rents as they fell due under this lease. There is also testimony that they joined in petitions and other proceedings in which this lease was recognized. There is no particular dispute as to these facts from which the defendants claim there was a ratification or affirmance of the lease after the plaintiffs became of age. [But it was not enough to show simply that they had done acts which would be in ratification or affirmance of the lease. It was incumbent to show that these acts were done with knowledge of the essential facts upon which their right to repudiate the lease rested. If these acts were done in ignorance of the essential facts upon which this right rested, then they would not amount to a ratification or affirmance of the lease. If, however, they were done with the knowledge of these essential facts, then the plaintiffs were presumed to know their rights under the law to repudiate the lease, and having gone on and received the rents with such knowledge, they

would be held to have ratified or affirmed it, to have made it a valid and binding contract upon them. If the case rested right here, there would be a question of fact, and, as we think, the only question of fact to be submitted to the jury; namely, whether or not these acts testified to and about which there is no particular dispute, were done by the plaintiffs with knowledge of the essential fact upon which their right to repudiate the lease rested, after they became of age. Upon this question of fact there is a conflict of evidence, and if this were the first case in which it had arisen it would be a question for your decision, under all of the testimony. But it appears that in 1881, the plaintiffs filed a bill on the equity side of this court for a rescission or cancellation of this lease, upon the ground that it was executed without legal authority; and that case was fully tried, first, before the master, afterwards before the court, and afterwards heard in the Supreme Court, and after a full hearing the bill was dismissed. Now the question arises, whether or not that was such an adjudication upon this question as to be conclusive upon the party. And we are of opinion that it was. It was not simply an incidental question which arose in the trial of that case. It was a question which was put in issue by the pleadings, and upon which there was precisely the same testimony which has been introduced here.] For example, in the bill we find that in the 4th paragraph it is there stated, " That your orators upon becoming of age were induced to accept the moneys which had accumulated as their share of the rents arising from said lease, in ignorance of their rights and without information as to the facts," and in the answer it is averred that " each received, when becoming of legal age, the money which accumulated as each of their shares of the rents arising from said lease, without protest, and so have continued until the bringing of this suit to receive the same, quarterly, without protest, a length of time exceeding thirteen years, since the youngest of these two plaintiffs became of age, during all of which time they were in possession, or had the knowledge of every fact and circumstance which now is theirs, and were all the time surrounded with every opportunity to ascertain their rights." So that we may say that that question was distinctly raised by the pleadings, and in our opinion was adjudicated in that case; and that adjudica-

tion is conclusive between the parties and cannot be reopened in any subsequent suit.

Therefore, we affirm the defendants' point that under all of the evidence your verdict must be for the defendants.

Plaintiffs' counsel have requested us to charge you upon the following points:

1. That the legal title having been shown to be in the plaintiffs, they are entitled to recover in this action unless the defendant show a just right of withholding the possession from them.

Answer: This is affirmed.

2. That the act of assembly produced by the defendant, so far as claimed to authorize a transfer of any part of the estate or right of the plaintiffs, is unconstitutional and void, in that it is at variance with the constitution of Pennsylvania, which guarantees the right of private property and forbids such arbitrary interference with the disposition of his property made by Madison F. Myers in his will, and with the vested right of the plaintiffs under said will; and it is also in violation of the 14th amendment, as well as the 5th, of the constitution of the United States, forbidding the taking from any one his private property without due process of law.

Answer: This is answered in the negative.[2]

3. That the lease presented by the defendant in support of its claim is insufficient to support the same, because it was not executed by these plaintiffs or any one having due authority to execute it, in such manner as to operate against the legal rights of these plaintiffs.

Answer: This is negatived.[14]

4. That the lease is inoperative because it has not been shown by the defendant to have been executed in compliance with the provisions of the act of assembly which it claims authorized the making of it.

Answer: This is negatived.[7]

5. That the only validity which the lease could ever have had, even if duly executed, would have been as a lease for twenty years, the provision for a further continuance being so wholly uncertain that its continuance and ending beyond the term of twenty years cannot be determined, this being especially the case in view of the uncontradicted testimony of

Daniel Edwards, the president and superintendent, that .he cannot tell how long they will continue to pay the rent.

Answer: This is negatived.[9]

6. That the paper dated May 4, 1864, executed by the guardians of the plaintiffs, in connection with the other lessors, produced by the defendant as showing a right of possession in it, if construed as a sale of the coal instead of the lease, would be invalid; because, (1) it would be such an instrument as the guardians were not authorized by the act of assembly to make; and, (2) it would be in violation of the fundamental principles of the law of real property in creating an estate of freehold to commence in futuro.

Answer: This is negatived.[10]

7. That if the jury find that the lease was not made upon the same terms and conditions with the guardians of these plaintiffs as with the other lessors or either of them, then the lease is invalid and the verdict should be for the plaintiffs.

Answer: This is negatived.[13]

8. That if the jury find that there was a conspiracy between the lessees and Philip T. Myers, one of the other lessors, to defraud the guardians and these plaintiffs, then the verdict should be for the plaintiffs.

Answer: This is negatived.[12]

9. If the jury find that the lessees paid to Philip T. Myers some·four thousand dollars more than they paid to the guardians of the plaintiffs, as a consideration for his executing the lease, then the lease would be invalid and the verdict should be for the plaintiffs.

Answer: This is negatived.

10. That the defendant having failed to show such a state of facts as made the execution of the lease valid, and having shown no just right in it of withholding the possession from the plaintiffs of the land in question, the verdict should be for the plaintiffs.

Answer: This is negatived.[15]  Under our instructions your verdict should be for the defendant.

The jury returned a verdict for the defendant. Judgment having been entered, the plaintiffs took this writ, assigning as error:

Arguments.

1. The admission of defendant's offer.[1]
2. The answer to the plaintiffs' point.[2]
3–6. The admission of defendant's offers.[3 to 6]
7. The answer to the plaintiffs' point.[7]
8. The portion of the charge embraced in [ ][8]
9, 10. The answers to the plaintiffs' points.[9 10]
11. The portion of the charge embraced in [ ][11]
12–15. The answers to the plaintiffs' points.[12 to 15]

*Mr. A. Ricketts* and *Mr. Alex. Farnham,* for the plaintiffs in error:

1. That the legislature had no power to authorize a change of the disposition of the property which was made in the will, and thus to interfere with the vested rights of the plaintiffs under the will, is simply indisputable. The act is unconstitutional and void, being in direct violation of the provision of the constitution, that no person " can be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land : " Shonk v. Brown, 61 Pa. 320; Schafer v. Eneu, 54 Pa. 304; Norman v. Heist, 5 W. & S. 171; Greenough v. Greenough, 11 Pa. 489; Ervine's App., 16 Pa. 256; Palairet's App., 67 Pa. 479; Richards v. Rote, 68 Pa. 248; Hegarty's App., 75 Pa. 503.

2. At the time the act was passed, the Orphans' Court of Luzerne county had full power to order the leasing or sale of the property in question, if upon a fair judicial hearing such leasing or sale should for any reason be found necessary. No sophistry can cover from sight the fact that this act was a plain usurpation of the judicial function, and that if the legislature had the power to give to their act in this case the force of a judicial decree, then they have the same power in any case, and the distinction and division between the legislative and judicial functions in our government are set aside. That the legislature cannot do this, has been repeatedly decided: Greenough v. Greenough, 11 Pa. 489; DeChastellux v. Fairchild, 15 Pa. 18; Menges v. Dentler, 33 Pa. 495; Reiser v. Saving Fund Ass'n, 39 Pa. 137; Baggs's App., 43 Pa. 512; Grim v. School Dist., 57 Pa. 433; Richards v. Rote, 68 Pa. 248.

3. Moreover, the act is in violation of amendments V. and

XIV. of the constitution of the United States, which expressly provide that no state shall deprive any person of life, liberty or property without due process of law. The force of these amendments has been a matter of frequent discussion in the United States Supreme Court, and the interpretation of that court is clearly declared in Yick Wo v. Hopkins, 18 U. S. 356. That the act under discussion is not "due process of law," is the plain ruling of this court, because this term is involved in the term, "law of the land," in our constitution, and a private act like this is not the law of the land: Craig v. Kline, 65 Pa. 399; Brown v. Hummel, 6 Pa. 91; Dale v. Medcalf, 9 Pa. 108; Ervine's App., 16 Pa. 256; Rutherford's Case, 72 Pa. 82; Philadelphia v. Scott, 81 Pa. 80.

4. The constitutionality of this act was not res judicata, as held by the court below. The case by the bill in equity for the cancellation of a lease for the term of twenty years, was brought during the continuance of the term; the present action of ejectment is brought after the expiration of the term. The question of the unconstitutionality of the act was neither presented nor considered in the proceeding in equity, as shown by the record itself. Hæc autem exceptio (rei judicatæ) non aliter agenti obstat, quam si eadem quæstio inter easdem personas revocetur; itaque ita demum nocet si omnia sint eadem, idem corpus, eadem quantitas, idem jus, eadem causa petendi, eadem conditio personarum: Vin., lib. 4, tit. 13, § 5.

5. That ordinarily the guardians had no power to execute such a lease as the one in question, is not disputed: Stoughton's App., 88 Pa. 198. But, assuming that the act was constitutional, the guardians were not so empowered until they had fully complied with the conditions which the act itself had prescribed. And it was necessary that the defendant, thus producing the lease and claiming under it, should show affirmatively that the requirements of the act were obeyed: Woods v. Lane, 2 S. & R. 53; Seechrist v. Baskin, 7 W. & S. 403; Jenks v. Wright, 61 Pa. 410; Wickersham v. Savage, 58 Pa. 365; Williams v. Peyton, 4 Wheat. 77; Thatcher v. Powell, 6 Wheat. 119; Ellet v. Paxson, 2 W. & S. 418. In this case, the lease was really executed April 4, 1864, and the date changed after the passage of the act. Further, the security required by the act was not entered until after the execution of the lease.

6. The plaintiffs were entitled to a fair and explicit state- ment of what right in the defendant the paper was claimed to be evidence, and of what claim they made under it; and it was error to admit the paper without requiring the defendant to state the purpose for which it was offered, when such statement was demanded: Milliken v. Barr, 7 Pa. 23; Morgan v. Browne, 71 Pa. 130. And this brings up the construction of the lease. Every lease must contain a sufficient degree of certainty as to its beginning, continuance and ending: 4 Greenleaf's Cruise, 58; 2 Bl. Com., 143. "The estate of a lessee for years is called a term, terminus, because its duration is limited and determined; for every such estate must have a certain begin- ning and a certain end:" Del. etc. R. Co. v. Sanderson, 109 Pa. 583, 591.

*Mr. H. W. Palmer* and *Mr. Samuel Dickson* (with them *Mr. H. B. Payne*), for the defendant in error:

1. The questions raised by the first, second, third, fourth and seventh assignments of error, involve the power of the guar- dians of the plaintiffs to make the lease or sale under which the defendants hold, the constitutionality of the power conferred by the act of assembly, and the regularity of their proceedings in executing the power. All these questions were fully pre- sented and considered in Myers' App., No. 460 January Term 1885, and decided against the plaintiffs. That judgment stands unshaken, and must rule the questions stated until it is re- versed.

2. The contract of the parties is for all the coal at 15 cents per ton, a certain quantity to be mined annually and paid for, whether mined or not. If the coal is not exhausted during the twenty years, then the grantees are to have the property, for "such other and longer time as the parties of the second part and their legal representatives shall continue to pay rent." The contract is one which the parties were competent to make, and is not forbidden by any rule or policy of law: Moore v. Miller, 8 Pa. 272; Lewis v. Effinger, 30 Pa. 281; Effinger v. Lewis, 32 Pa. 367.

OPINION, MR. JUSTICE MITCHELL:
This is an ejectment by plaintiffs in error who were also

plaintiffs below, against defendants in error, who claim to hold possession as lessees of plaintiffs' title. It is admitted that the land was in possession of plaintiffs' father, Madison Myers, as owner, at his death in 1859, and that plaintiffs are devisees under his will of undivided interests in the land.

Defendants hold possession under a lease from the devisees of Madison Myers in 1864, all the other devisees being then sui juris and joining in the lease, and plaintiffs, then infants, being parties to the lease through their guardians, acting under the authority of a special act of assembly approved April 15, 1864, P. L. 433. The defendants also, under the plea of former recovery, gave evidence that the title, as between the present parties, was res adjudicata. The learned judge presiding at the trial sustained this view as to every point in the case except the continuance of the lease beyond twenty years, and as to this, he held the lease still in force, as a matter of law, and therefore peremptorily directed a verdict for the defendants.

Of the fifteen specifications of error, eight are exceptions to the answers to points, and therefore entirely useless. Points, or requests for charge, are statements of the rules or particular portions of the law, which counsel deem applicable to the special facts of the case. Their use is, first, to direct the attention of the judge to the view of the law which the parties desire him to take, and secondly, thereby to have the jury instructed upon the principles which they ought to apply in making up their verdict, after they have ascertained the facts. While points may be submitted even in cases like the present, and are often useful as suggestions and condensed arguments, yet where upon the whole case the judge conceives it his duty to give the jury a binding instruction, the answers to points become mere dissertations on the law, useless to the jury, unnecessarily burdensome to the judge, and complicating to the record when presented for consideration here. It is frequently satisfactory to the jury as well as the parties, and assists our labor if the case comes here, for the judge to indicate, in a general way, the grounds of his action, but it is the better practice to decline to answer points in detail, as no longer necessary. The correctness of the direction to the jury to find in one way or another, depends on the facts admitted or estab-

lished, and if the conclusion is right on the facts, no error is committed though the reasons assigned are insufficient or even incorrect.

The remaining specifications of error raise four questions; first, whether the act of assembly was constitutional, second, whether the lease was executed in accordance with the directions of the act, third, whether the lease was within the power granted, and fourth, whether it had by its own terms expired.

The first three questions were correctly disposed of by the learned judge at the trial, and we might well rest the case on his charge. But it was not necessary to discuss them at all. They were res adjudicatæ.

To September Term 1881, the plaintiffs filed a bill in equity against the defendants, setting up their title under their father's will; their minority in 1864; the making of the lease now in question; their acceptance of the accumulated royalty under the lease, upon coming of age, in ignorance of the facts and their rights; their information and belief that the lease was not made in pursuance of the act; an averment that their guardians were not authorized to make the lease; and concluding with a prayer that the lease be declared void, and ordered to be surrendered for cancellation. An answer was filed by defendants, setting up the act of 1864; maintaining the validity of the lease; and averring acts of ratification by the complainants, for a series of thirteen and sixteen years respectively, after coming of age. Evidence was taken upon both sides, and an elaborate report was made by a master, finding,

1. That the act of 1864 was constitutional, and conferred full legal authority upon the guardians to make a lease.

2. That the lease in question was not made strictly in pursuance of the terms imposed by the statute, and had therefore been voidable.

3. But that complainants after arriving at age had fully ratified the lease and were bound by it.

Exceptions to this report were dismissed in a careful and learned opinion by the president judge of the Common Pleas, covering all of the points discussed by the master, and a decree was entered dismissing the bill with costs. Complainants then took an appeal to this court, of January Term 1885, No. 460, and assigned, among other things, that the court erred, " 3, in

deciding that the lease was valid; 4, in declaring the special act constitutional; and 5, in affirming the master's report."

The decree was affirmed by this court, in a brief opinion, per curiam, referring to the absence of fraud (which alone could do away with the force of the acts of ratification), and continuing: " The court, in an able and satisfactory opinion, overrules all exceptions to the report. The reasons in that opinion contained, vindicate the conclusion at which it arrived." The scope of the opinion thus indorsed, has already been noted, and in view of that, and of the errors alleged in it, which were thus held not to be errors, it is impossible to maintain, as is now sought to be done, that the decree of this court only determined that the bill must fail on technical grounds, for want of jurisdiction in equity.

The learned judge at the trial held that this former adjudication concluded the plaintiffs in the present action, and I have been thus particular in setting out the proceedings in detail, because of the earnest and determined effort of counsel to get away from the force of this ruling.

The binding effect of a former adjudication depends upon the identity of the rights involved, not of the evidence, or of the arguments used. An examination of the causes of action shows not only that every right involved in the present case was necessarily involved in the former, but even that nearly every point made now in support of those rights, was in fact argued and considered then. The only exceptions are the repugnance of the act of 1864 to the constitution of the United States, and the termination of the lease.

In regard to the former, it would be sufficient to say that the point might have been made, and therefore is concluded, whether actually made or not. But in fact the constitutionality of the act was not material then or now, as the complainants, with full knowledge of what had been done in their name, ratified, confirmed, and accepted the benefits of it, for years after coming of age, and whether it was done with or without authority, they were held to be estopped from disputing its validity. We do not think there is the slightest basis for objection to the act under the constitutions either of this state or of the United States, but we forbear to discuss this aspect of the case because entirely immaterial.

With regard to the continuance of the lease, it appears that the term of twenty years for which it was first to run, expired during the pendency of the proceeding in equity, and no doubt the court might have considered this question, though not specifically set up in the original bill, had application been made by supplemental petition, or even under the prayer for further relief. As it is not clear, however, that the court did actually have its attention directed to this point, we will add here that the cases of Lewis v. Effinger, 30 Pa. 281, and Effinger v. Lewis, 32 Pa. 367, settle the validity of a lease for a term certain, and thereafter to continue at the will of the lessee.

The fifth specification of error involves a point of practice which it may be well to notice. Upon defendants offering the lease in evidence, plaintiffs asked the purpose of the offer, and excepted to the ruling of the court that the paper showed for itself what it was offered for.

There is no absolute rule that a party offering a writing can be called upon to state formally the purpose of the offer. Generally the other party has a right to examine the paper before it is passed upon by the judge, though there may be exceptional cases where even this right would be suspended for a time, if the peculiar exigency of the case demanded it. On view of the paper, counsel may call for a statement of the purpose for which it is offered, but how formally this statement is to be made, in how much detail, etc., are matters necessarily within the discretion of the presiding judge, and this court will not reverse unless there is a manifest abuse of such discretion.

The right to an offer of what a witness is called to prove, stands upon a somewhat different basis. There can be no inspection of his testimony beforehand, and it may be not only irrelevant but highly improper, and the opposite party has a right to guard against possible danger in this way. The remarks of BURNSIDE, J., in Milliken v. Barr, 7 Pa. 24, and of SHARSWOOD, J., in Morgan v. Browne, 71 Pa. 136, were made with reference to witnesses, not documents, and even in regard to witnesses, the rule is intended to aid, not to obstruct the fair and orderly trial of the case, and its practical enforcement depends very largely on the special circumstances at the moment when the question arises, and therefore upon the discretion of the judge.

The offer in the present case was of the lease which purported to pass the title under which plaintiffs claimed, to the parties under whom defendants claimed. It went directly to the very substance of the issue, and the learned judge was quite justified in saying " the paper shows for itself, and is sufficient of what it is offered for."

The case being entirely clear of error, the judgment is affirmed.