Poland Coal Co., Appellant, *v.* Hillman Coal & Coke Co.

Argued October 2, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused November 24, 1947.

*William McC. Houston,* with him *Fred C. Houston, J. Wood Williamson* and *Houston & Houston,* for appellant.

*Earl F. Reed,* with him *William C. O'Neil, Thorp, Bostwick, Reed & Armstrong, Scott & Hook* and *Montgomery & Thompson,* for appellee.

OPINION BY MR. JUSTICE LINN, November 10, 1947:

There are two appeals by plaintiff; one in plaintiff's action in equity for the cancellation of its deed and the other in its action at law to set aside the report and award made by Eavenson pursuant to the mine-lease.

The appeals were argued together on consolidated records; we need only indicate our reasons for agreeing with the conclusions reached by President Judge HOOK.

Appellant makes two points; that the court erred (1) in holding the option exercised by defendant valid instead of void under the rule against perpetuities; and (2) in holding that Eavenson, in determining the quantity of unmined coal to be paid for on the exercise of the option, acted as an appraiser and not as an arbitrator within the meaning of the Arbitration Act of 1927, P. L. 381, 5 P. S. 161.

By agreement dated November 13, 1941, the plaintiff granted to defendant for a term ending October 31, 1961, a mining operation and "the exclusive right to mine and remove all of the remaining unmined coal . . . in and underlying the tract of land shown outlined in red upon the map attached . . ." etc.

Section III entitled "Lessee's Right to Purchase Leased Premises" provided: "Notwithstanding anything contained herein to the contrary, the Lessor hereby grants to the Lessee the option, at any time subsequent to November 1st, 1945, to purchase the remaining tonnage of recoverable coal (said tonnage to be determined jointly by the Lessor and Lessee) by paying to the Lessor a sum equivalent to the then present worth of the rent and royalty which would have become payable upon said tonnage at the aforesaid royalty rate of Six Cents (6¢) per net ton, if the remaining recoverable tonnage had been mined and removed at the average annual rate at which coal has been mined and removed prior thereto, but not at a rate of less than the minimum of 100,000 tons per year heretofore specified. Such present worth shall be arrived at by discounting at the rate of 4% per annum the payments which would have been due if the remaining recoverable coal had been mined and removed at the said average rate. If the parties shall fail to agree upon the amount of recoverable coal then remaining in the leased premises, such amount shall be

determined by the Arbitrator provided for in Section X hereof, and his decision shall be final and binding upon both parties hereto. Upon payment to the Lessor of the amount payable as determined by the parties or by the Arbitrator, less the aforementioned payment of Ten Thousand Dollars ($10,000.00) and less unused credits for payments of minimum annual royalties theretofore made in accordance with Section II hereof, the Lessee shall become entitled to receive from the Lessor a good and sufficient deed in recordable form, conveying to the Lessee all the real property covered by this lease, and a bill of sale for the personal property."

Section IV entitled "Escrow deed and bill of sale" provided: "The Lessor, simultaneously with the execution hereof, will execute and acknowledge a general warranty deed conveying to the Lessee all of the coal lands and appurtenant mining rights, surface lands and other real estate covered by this lease, and will execute a bill of sale to the Lessee for all personal property located in or upon the leased premises, including, but not limited to, all mining equipment located both inside and outside of the mine. Said general warranty deed and bill of sale shall be deposited in escrow with The Colonial Trust Company, Pittsburgh, Pennsylvania, and shall be accompanied by an escrow agreement between the Lessor, the Lessee and The Colonial Trust Company, specifying that in the event the Lessee shall have mined, removed and paid for all of the recoverable coal (as said term is hereinafter defined) [1] in the leased premises, said escrow deed and bill of sale shall be returned to the Lessor; and that in event the Lessee shall have exercised its option to purchase the leased premises, as provided for in Section III hereof, the said deed and bill of sale shall be delivered to the Lessee."

Section X entitled "Arbitration" provided: "In case of any difference of opinion between the Lessor and the

---

[1] Recoverable coal is defined in section VII.

Lessee as to the proper method [dealt with in section VI] of conducting mining operations in the coal covered by this lease, or in determining whether or not certain coal is recoverable in accordance with the definition hereinbefore set forth, [in section VII] or in determining the remaining tonnage of recoverable coal in the event of the Lessee exercising its option to purchase the leased premises, or the present worth of royalty payments for the remaining recoverable coal, such differences will, upon the written request of either party hereto, be submitted for decision to an Arbitrator, as hereinafter provided, whose decision shall be final and enforceable by the party in whose favor it is rendered.

"The parties hereto agree that Howard N. Eavenson, of Pittsburgh, Pennsylvania, shall be the Arbitrator under this agreement, . . . In event such Arbitrator shall not be able or willing to serve or shall not be disinterested, then the parties hereto agree that Joseph H. Gerst, of Pittsburgh, Pennsylvania, shall act as Arbitrator. In the event that neither of said persons shall be able or willing to serve, then the parties agree that a person familiar with the coal business shall be appointed as Arbitrator by the Senior Federal Judge of the Western District of Pennsylvania, upon the application of either party to this agreement after notice to the other. The cost of any arbitration shall be borne equally by the Lessor and the Lessee."

1. We reject appellant's contention that the option violates the rule against perpetuities. In dealing with their contract it is necessary to see what intention the parties have expressed. The words of the option show that both parties intended that appellant's offer to sell the mine must be accepted by defendant during the term of the lease. The optionee is described as the "lessee" which implies an existing lease; the amount payable on the exercise of the option is specified by reference to royalty payable on the remaining tonnage as of that time, and in that connection, reference is also made to the

annual minimum tonnage to be mined, elements which show the parties had in mind an existing tenancy. The requirement that the lessee must pay "to the Lessor a sum equivalent to the then present worth of the rent and royalty which would have become payable . . . if the remaining recoverable tonnage had been mined and removed at the average annual rate at which coal has been mined and removed prior thereto . . ." is an express stipulation by the parties that the option must be exercised while the lease was in effect, otherwise, it would have no meaning.

Plaintiff's brief states, "If the option in the Poland Lease is limited to the term of the lease, then it is valid whether contained in a lease or not, simply because a twenty year option is always valid under the rule against perpetuities." *Burton v. Thaw,* 246 Pa. 348, 92 A. 312, to which plaintiff refers, has no application because in that case there was no leasehold.

Section 395 of the Restatement of Property provides: "When a lease limits in favor of the lessee an option exercisable at a time not more remote than the end of the lessee's term

(a) to purchase the whole or any part of the leased premises; or

(b) to obtain a new lease or an extension of his former lease, then such option is effective, in accordance with the terms of the limitation, even when it may continue for longer than the maximum period described in §374 [i.e., the period of the rule against perpetuities]." The application of the principle is illustrated in *Anderson v. Anderson,* 251 Ill. 415, 96 N. E. 265; *Ober v. Brooks,* 162 Mass. 102, 38 N. E. 429; *Schroeder v. Gemeinder,* 10 Nev. 355; *Thompson v. Coe,* 96 Conn. 644, 115 A. 219; *Bennett v. Stodgdell,* 36 Ontario Law Rep. 45. See also Simes; Future Interests, vol. 2, section 512, p. 379, section 515, p. 386; Leach: Perpetuities in a Nutshell, 51 Harv. L. Rev. 668 et seq.; Abbott, Leases and The Rule Against Perpetuities, 27 Yale L. J. 878; 35 Yale L. J.

213; Langeluttig: Options to Purchase and The Rule Against Perpetuities, 17 Va. L. Rev. 461.

In compliance with section 4 of the contract, on November 13, 1941, the date of the contract, plaintiff executed and delivered a deed and bill of sale and deposited them with the designated escrow agent which in turn agreed to deliver them in the contingency provided for. In 1945, by agreement of the parties this deed was withdrawn and another substituted for it conveying the "same coal mine and other real property as that covered by the lease but excluding therefrom three certain tracts of surface land together with houses, buildings and structures erected thereon . . ." The reason for this was that the plaintiff at that time conveyed this surface land and structures to the defendant's nominee for the sum of $69,000. When this was done the parties agreed "that if defendant thereafter exercised the option to purchase the remaining acreage of recoverable coal, granted to it under the lease, the purchase price thereof should be reduced by, and defendant credited with, the sum of $69,000, the amount of the purchase price for the surface tracts and houses . . . otherwise, the said lease and escrow agreement should remain in full force and effect." At that time, it may be noted, plaintiff apparently had no thought of suggesting that its option to defendant was void for any reason.

2. Section X which provided for arbitration, specified a number of contingencies. One of them was "determining the remaining tonnage of recoverable coal in the event of the Lessee exercising its option to purchase the leased premises, . . ." Section III specified that "If the parties shall fail to agree upon the amount of recoverable coal then remaining in the leased premises, such amount shall be determined by the Arbitrator provided for in Section X hereof, . . ."

The learned chancellor found that in January, 1946, defendant exercised the option and notified plaintiff "that since plaintiff was not disposed to agree or attempt

to agree on the amount of recoverable coal remaining in the leased premises and the amount payable therefor, this matter was being submitted to Howard N. Eavenson for determination in accordance with Sections III and X of the lease, . . ." Eavenson notified both parties that he had agreed to act under Section X and "requested both of them to submit to him as promptly as possible any information that they had regarding the amount of unmined coal left in the property, and their computations of its value." In response to Eavenson's request "defendant," as the chancellor found, "submitted maps showing the status of the mine workings and certain statements showing the amounts of coal mined, but no data of any kind was submitted to Eavenson by plaintiff."

The chancellor also found: "22. Although plaintiff knew that Eavenson was proceeding to make a determination of the remaining tonnage of recoverable coal, as requested by defendant in connection with the exercise of its option, plaintiff refused to take any part in the proceedings before Eavenson, and not only did not request any hearing or opportunity to present evidence or data to Eavenson, but also refused to comply with his express request to produce any evidence it had as to the remaining tonnage of recoverable coal.

"23. On March 26, 1946, Howard N. Eavenson simultaneously sent his report and findings by registered mail to both plaintiff and defendant, in which he found, *inter alia*, that as of January 21, 1946, the date defendant elected to purchase the remaining tonnage of recoverable coal, there were 2,313,000 net tons of recoverable coal remaining in the Poland mine, and that the amount due to plaintiff from defendant therefor, was $43,714.03, with interest at the rate of 4% from January 21, 1946 to date of actual payment."

No facts found by the chancellor are assigned for error; we must therefore accept them. By steps not in

question and therefore not recited, defendant paid into court the amount due plaintiff and received from the escrow agent the deed for the property and recorded it.

On June 15, 1946, the plaintiff, pursuant to section 10 of the Arbitration Act, 5 P. S. 170, obtained a rule on defendant to show cause "why the award of the arbitrator, dated March 26, 1946, should not be vacated . . ." After hearing the court discharged the rule. The appeal at No. 156 is from that order. In the Statement of Questions Involved in this appeal, appellant suggests that the report should have been vacated because Eavenson "(1) Failed to hold a hearing or give notice thereof. (2) Failed to take testimony under oath or otherwise. (3) Based said award solely on *ex parte* evidence." In other words, appellant contends that in measuring the coal to be paid for Eavenson was an arbitrator acting under the Arbitration Act of April 25, 1927, P. L. 381, 5 P. S. 161. On the other hand, the defendant contends (1) that Eavenson was a mere appraiser to the performance of whose duties the Act had no application and (2) assuming that the Act applied, its requirements "were either complied with or were waived by appellant."

Eavenson notified both parties of the reference to him and that he would proceed and requested both, as the learned chancellor found, to submit "any information that they had regarding the amount of unmined coal left in the property, and their computations of its value." Plaintiff did nothing with respect to the notice or the requests. The chancellor stated that plaintiff did not contend that "Eavenson had made any error in his calculations or had been guilty of any fraud, or that his said report or findings were in any way incorrect."

In dealing with section X in its relation to the evidence in the record, it is necessary to ascertain the parties' intention. The section provided for various contingencies. For present purposes it may be considered

as reading as follows: "In case of any difference of opinion between the lessor and the lessee" as to the remaining tonnage of recoverable coal to be paid for at the specified rate, the "differences will, upon the written request of either party hereto, be submitted for decision" to Eavenson.

The word "arbitrator," applied by the parties, is not controlling: *Wilson v. Getty,* 57 Pa. 266, 269; *Green & Coates Street Passenger Rwy. Co. v. Moore,* 64 Pa. 79; *Grote v. Stein,* 99 Pa. Superior Ct. 556, 561. The question is whether, in the words of the Arbitration Act, there was "a controversy thereafter arising out of said contract or refusal to perform any part thereof"? "Thereafter arising," in the context, means arising after defendant notified plaintiff that it exercised the option to buy the mine. What were the facts at that time? Defendant was mining coal and paying royalty to the plaintiff pursuant to the contract; there was no controversy about those two facts. The next fact to be noted is that defendant gave notice that it exercised the option by accepting plaintiff's offer to sell the unmined coal at the specified price. The acceptance of the offer required the plaintiff to convey. All that remained open was to measure the amount of the coal remaining to be mined. There was no controversy about plaintiff's obligation to convey, laying aside for the moment, its claim that the option was void, an objection not suggested by plaintiff in 1945 when it conveyed to defendant for $69,000 the surface rights to certain tracts of land in which defendant was mining coal. Plaintiff's denial of the validity of the option did not present a controversy within the terms of section X; the validity of the option is not within the terms of section X. The only undetermined element in the transaction was the quantity of coal and there was no dispute about that quantity and there could be none because the parties had long before provided that the quantity of coal to be paid for was to be deter-

mined by Eavenson.[2] There was no controversy, within the meaning of the word as used in the Arbitration Act, to be settled by an arbitrator. Eavenson was to calculate the remaining mineable coal tonnage by applying the rules of measurement customary in the profession in which the parties agreed that he was skilled: compare *Phila. Housing Authority v. Turner Construction Co.*, 343 Pa. 512, 519, 23 A. 2d 426; *Green & Coates Street Ry. Co. v. Moore*, 64 Pa. 79; *Grote v. Stein*, 99 Pa. Superior Ct. 556; *Omaha v. Omaha Water Co.*, 218 U. S. 180; *In re Carus-Wilson & Greene*, L. R. 18 Q. B. D. 7; *In re Fletcher*, 237 N. Y. 440, 445, 143 N .E. 248; *Franks v. Franks*, 294 Mass. 262, 266, 1 N. E. (2d) 14.

We have considered all the assignments of error and find them without merit.

In each appeal the order appealed from is affirmed, costs to be paid by the appellant.

---

[2] The learned judge found: "Poland had knowledge of the remaining acreage of coal owned by it and leased to Hillman. The plan or plot of the Poland mines attached to the lease agreement shows the remaining unmined coal and the development of the mine at the date of the lease."