Jean **CAMERLO,** Appellant,

v.

**HOWARD JOHNSON COMPANY,**
Appellee.

No. 82–5540.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 28, 1983.

Decided June 23, 1983.

As Amended June 30, 1983.

have no power under FECA to compel reim- bursement based on the facts of this case.

988

William J. Kelly, Elderkin, Martin, Kelly, Messina & Zamboldi, Erie, Pa., for appellant.

Ted J. Padden, Quinn, Gent, Buseck & Leemhuis, Inc., Erie, Pa., for appellee.

Before ADAMS, WEIS and BECKER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity case we encounter the rule against perpetuities, a subject not noted for the frequency of its appearance in federal court. The district court determined that the rule does not apply to leases that are perpetually renewable. We agree and affirm the judgment in this respect. Because a non-competition covenant in the lease at issue in this case does not present a question that is ripe for adjudication, however, we vacate the judgment on that claim.

Plaintiff sought a declaratory judgment that her lease with defendant was void on

1. The district court's opinion is published at

the grounds that it violated the rule against perpetuities, the rent fixed was so inadequate as to be unconscionable, and the collateral covenants against competition were unreasonable. The district court found the lease valid and entered summary judgment for defendant on all claims.[1]

Plaintiff owns a 59 acre tract located at the intersection of Route 19 and Interstate 90 near Erie, Pennsylvania. In July 1960, she leased 12 of these acres for a term of 99 years, "renewable thereafter forever, at the same rental as the ninety-ninth year." In addition, the lessee was given an option to purchase the property after July 7, 1980 for $200,000.

As part of the lease, plaintiff agreed that she would not maintain on the retained land "a business, use or occupancy" that would be detrimental to or competitive with the operation of a motel, restaurant, or gas station on the leased property. Plaintiff also agreed that she would not erect any building higher than twenty feet on designated portions of her remaining land.

A motel was built on the leased premises. In 1981, defendant took an assignment of the lease and purchased the motel for $2,300,000. Defendant has not exercised the option to purchase the land owned by plaintiff, but has continued to pay the specified $12,000 annual rental.

In her complaint plaintiff alleged that:

1. the lease is perpetual in term and "therefore violative of the rule against perpetuities ... and also an unreasonable restraint on alienation;"

2. perpetual leasing at an annual rental of $12,000 is unconscionable and, therefore, the lease is void; and

3. the restrictive covenants on the plaintiff's land are "an unreasonable restraint upon the alienation of retained land and, therefore, [the] lease is wholly [or] partially void."

Although not specified in the complaint, plaintiff also contended in the district court that the option to purchase violated the rule

545 F.Supp. 395 (W.D.Pa.1982).

against perpetuities and invalidated the lease.

The district court held that under Pennsylvania law a lease with a perpetual option to renew or an option to purchase need not comply with the rule against perpetuities. Those provisions were therefore valid. As to the restrictive covenants on the use of the plaintiff's land, the district court found them enforceable because the intent of the parties had been clearly expressed and the restrictions were not outmoded.

The court also rejected the plaintiff's argument that the amount of the rent made the lease unconscionable. Plaintiff contended that when the lease was negotiated the rent was calculated on the basis of a 6 percent return on land valued at $200,000, and that the ensuing dramatic increase in interest rates made her current return unconscionable. Although recognizing that interest rates had increased in recent years, the district judge concluded that the annual rents were "not so grossly insufficient as to make the lease unconscionable." Even at the agreed rent, plaintiff had received approximately $250,000 since the lease was signed.

## I.

On appeal, plaintiff renews the contentions she raised initially and defendant adopts the district court's position on the merits. Moreover, although its initial brief in this court did not raise the jurisdictional question of the existence of a "case or controversy," defendant did assert the objection in the district court. Since that matter goes to our constitutional power to adjudicate, we are obliged to examine the issue even at this stage of the litigation.

The enactment of the Federal Declaratory Judgment Act in 1934, Act of June 14, 1934, ch. 512, 48 Stat. 955 (current version at 28 U.S.C. §§ 2201–02 (1976 & Supp. V 1981)), added what has proved to be a useful procedural device to federal practice. Although declaratory relief has been granted on a wide spectrum of legal issues, the power to entertain such suits is limited by the Article III case or controversy requirement. The opening phrase of the statute itself emphasizes that the remedy is available only "in cases of actual controversy." 28 U.S.C. § 2201. In *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), the Supreme Court instructed that there must be a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241, 57 S.Ct. at 464.

The general considerations of *Aetna Life* are not always capable of easy application. As the Court recognized in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the difference between an abstract question and a controversy under the Act is only one of degree. It phrased the question as whether there was a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Id.* at 273, 61 S.Ct. at 512. Determining whether a controversy exists becomes even more complex when a court is asked to adjudicate the legal consequence of some event that may or may not occur. This problem is compounded by the contingency that even if the act does occur, it might not be challenged. *See McCahill v. Borough of Fox Chapel,* 438 F.2d 213, 218 (3d Cir.1971).

We choose not to explore in depth once again the extensive case law and commentary on the application of the case or controversy requirement to declaratory judgments. *See id; see generally* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2757 (1983); 6A J. Moore, Moore's Federal Practice ¶ 57.12 (1983); E. Borchard, Declaratory Judgments (1941). Instead, we turn to the case at hand.

Plaintiff contends that the lease contains several invalid terms. She argues first that the option to renew and the option to purchase are invalid because they violate the rule against perpetuities and its underlying policy considerations. Since plaintiff asserts that the invalidity of the options invalidates the whole of the conveyance, *see* Restatement of Property § 402 (1944), this

claim places in jeopardy the defendant's current right to possession of the leased premises. Thus, a case or controversy is presented.

Similarly, the plaintiff's contention that the rent provision of the lease is unconscionable calls into question the present relationship of the parties. A successful challenge on this count would result in either alteration of the rental terms or cancellation of the lease. *Cf.* 13 Pa.Cons.Stat.Ann. § 2302 (Purdon Supp.1982) (court may refuse to enforce entire contract or limit application of unconscionable term). Thus, as in the situation involving the option clauses, "adverse interests, of sufficient immediacy and reality," are extant.

■ The challenge to the restrictive covenants on the plaintiff's land, however, stands on a different footing. The complaint states that the covenants "and the perpetual nature thereof are unreasonable restraints upon the alienation of the plaintiff's retained land." To buttress this position, however, she argues in the main that the covenants are "unduly burdensome and unreasonable." She asserts that public policy favors unrestricted use of property and that covenants not to compete must be reasonable in time and territory. Thus, although the plaintiff urges that the covenants are restraints on alienation which limit the saleability of her land and void the lease, in reality her attack is one commonly asserted against covenants limiting competition—namely, that the covenant is unreasonable in duration and scope.[2] *See e.g., Teodori v. Werner,* 490 Pa. 58, 66 n. 5, 415 A.2d 31, 34 n. 5 (1980).

Stripped to these essentials, the restrictive covenant claim does not present a case or controversy. The record does not reveal that plaintiff even contemplates activity arguably in violation of the covenants. She has not alleged an intention to build or engage in competitive activity, or that such actions by her would meet with opposition

by defendant. These shortcomings are not merely illusory. The passage of more than twenty years since the inception of the lease may have brought such changes in the surrounding communities that the restrictions are no longer of any interest to defendant.

In short, the reality and immediacy necessary for the existence of a justiciable controversy are not presented by the record on the restrictive covenants at issue here. The situation is much like that in *McCahill v. Borough of Fox Chapel,* where we found that no case or controversy was presented by a property owner who challenged a zoning ordinance without alleging that he had applied for a construction permit or had been denied occupancy of a building on his land. We dismissed the case because "it is certain neither that appellant would be denied the use he desires of his real estate, nor that sanctions would be imposed upon him if he did." 438 F.2d at 218.

We conclude, therefore, that the district court had no jurisdiction to enter a declaratory judgment on the restrictive covenants.

## II.

■ We return then to the argument that the rule against perpetuities has been violated. As codified in Pennsylvania, 20 Pa.Con.Stat.Ann. § 6104(b) (Purdon 1975), the rule states in relevant part:

"Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events, any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void."

The rule is designed to prevent unreasonable restraints on alienation, *In re Estate of Mather,* 410 Pa. 361, 370, 189 A.2d 586, 591 (1963); *see also Southeastern Pennsylvania Transportation Authority v. Philadelphia Transportation Co.,* 426 Pa. 377, 385, 233

2. Analogously, the rule against perpetuities is not considered applicable to covenants because "[t]he willingness of equity to extinguish covenants on a finding of a 'change of circumstances' makes the [rule] ... unnecessary for the protection of the public." 5 R. Powell, Powell on Real Property § 775 at 72–93 n. 8 (1981); *see also* Restatement of Property § 399, Comment d (1944).

A.2d 15, 19 (1967), *cert. denied,* 390 U.S. 1011, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968), and thus does not apply to vested estates, *In Re Lilley's Estate,* 272 Pa. 143, 150, 116 A. 392, 395 (1922).

No Pennsylvania Supreme Court case in recent years has addressed the applicability of the rule against perpetuities to perpetual leases. However, in *Myers v. Kingston Coal Co.,* 126 Pa. 582, 601, 17 A. 891, 893 (1889), the court approved the validity of a lease that was for a term certain, "and thereafter to continue at the will of the lessee." *See also Effinger v. Lewis,* 32 Pa. 367 (1859), *Lewis v. Effinger,* 30 Pa. 281 (1858). More recently, the Pennsylvania Superior Court, in *Sterle v. Galiardi Coal & Coke Co.,* 168 Pa.Super. 254, 257, 77 A.2d 669, 672 (1951), cited *Myers* as approving such leases, but noted that "covenants for continued renewals tending to create a perpetuity are not favored."

The weight of authority elsewhere holds that, absent a statutory prohibition, a perpetual lease or a right to perpetual renewal of a lease does not violate the rule or create a restraint on alienation. *See e.g. Lonergan v. Connecticut Food Store, Inc.,* 168 Conn. 122, 357 A.2d 910, 913 (1975); *St. Regis Paper Co. v. Brown,* 247 Ga. 361, 276 S.E.2d 24, 26 (1981); *Keogh v. Peck,* 316 Ill. 318, 147 N.E. 266, 271 (1925); 5 R. Powell, Powell on Real Property § 771[2] at 71–72 (1981); Abbot, "Leases and the Rule Against Perpetuities," 27 Yale L.J. 878 (1918). *See also* Restatement (Second) of Property, Landlord and Tenant § 1.4, Reporter's Note to Section 1.4 (1977).

Our survey of the applicable law persuades us that the district court did not err in its conclusion on the renewal clause.

A lessee's option to purchase the leasehold was once thought by some to be subject to the rule against perpetuities. *See* J. Gray, The Rule Against Perpetuities § 230.3 (4th ed. 1942). Other authorities, however, recognize that an option to purchase granted to a lessee has the same substantial social value as an option to renew a lease. In both situations, "[a] lessee in possession of lands . . . needs to be able so to plan for the future as to get the benefits of the full utilization of the land during his lease-term. This makes it important for such a lessee and for society in general, that extensions or renewals of the term and purchase of the lessor's ownership be facilitated rather than prohibited." Restatement of Property § 395, Comment a (1944) *quoted in* 5 R. Powell, Powell on Real Property ¶ 771[2] at n. 17 (1981). *See also* Abbot, "Leases and the Rule Against Perpetuities," 27 Yale L.J. 878, 885–889 (1918); Note, "Options to Purchase and the Rule Against Perpetuities," 17 Va.L.Rev. 461 (1931).

Plaintiff relies on *Barton v. Thaw,* 246 Pa. 348, 92 A. 312 (1914), to support her position that the option here is invalid. In *Barton,* the court held that a purchase option "unlimited in point of time" was void.

The scope of the *Barton* decision has been limited by later decisions of the Pennsylvania Supreme Court. In *Poland Coal Co. v. Hillman Coal & Coke,* 357 Pa. 535, 55 A.2d 414 (1947), *cert. denied* 333 U.S. 862, 68 S.Ct. 742, 92 L.Ed. 1141 (1948), the court found the earlier case inapplicable "because in [*Barton*] there was no leasehold." The court quoted section 395 of the Restatement of Property, which provides that "[w]hen a lease limits in favor of the lessee an option [to purchase the leased premises] exercisable at a time not more remote than the end of the lessee's term . . . then such option is effective . . . even when it may continue for longer than [the period of the rule against perpetuities]." 357 Pa. at 540, 55 A.2d at 416. *See also* Abbot, "Leases and the Rule Against Perpetuities," 27 Yale L.J. 878, 884–889 (1918); Note, "Options to Purchase and the Rule Against Perpetuities," 17 Va.L.Rev. 461 (1931) (both articles cited with approval in *Poland Coal.*)

In *Southeastern Pennsylvania Transportation Authority v. Philadelphia Transportation Co.,* the Pennsylvania Supreme Court rejected a view of *Barton* that would create a "blanket condemnation of all remote options." According to the court, the decision in *Barton* weighed the interests of the community at large, and thus determining the validity of an option requires balancing the

danger of fettering the free use of property against considerations of public concern and welfare. 426 Pa. at 385, 233 A.2d at 19. The court also observed that under the "wait and see" approach to the rule enacted by the Estates Act of 1947, Act of April 24, 1947, P.L. 100 (now codified at 20 Pa.Con. Stat.Ann. § 6104), options are "no longer void from the beginning as in *Barton v. Thaw.* [A]n unlimited option should be allowed to run until the expiration of the permissible period, and stricken down only if it remains unexercised at that time." 426 Pa. at 385–86, 233 A.2d at 20.

These cases indicate that *Barton* does not have the controlling effect plaintiff attributes to it. The option in the ninety-nine year lease here is granted to the lessee and as such tends to promote use of the property. We conclude that the trial court did not err in holding the option valid.

■ Finally, the district court also rejected the plaintiff's argument that the rental terms were unconscionable, finding that the amount provided was not so grossly insufficient as to void the lease. The plaintiff's argument in the district court was based upon the increase in interest rates, which she contends made her current rate of return "unconscionably low."

There may be situations where a change in economic conditions renders enforcement of a contract "unconscionable," *see generally Estate of Link v. Wirtz,* 7 Kan.App.2d 186, 638 P.2d 985, 987–89; *Iafolla v. Douglas Pocahontas Co.,* 250 S.E.2d 128, 133 (W.Va.1978), or relieves a party from performance on the basis of impracticability or frustration of purpose, *see generally Aluminum Co. of America v. Essex Group, Inc.,* 499 F.Supp. 53, 70–78 (W.D.Pa.1980); *Alvino v. Carraccio,* 400 Pa. 477, 482, 162 A.2d 358, 361 (1960); K. Rosenn, Law and Inflation 98–109 (1982). That case, however, is not presented here, and thus we conclude that the trial court reached the correct result. We note that since the date of the district court's opinion, interest rates have subsided substantially and the lease agreement should now be more attractive to plaintiff. Moreover, as noted by the trial court, plaintiff has received over $250,000 in

rent since the commencement of the lease. Even if considered a bad bargain, that alone would not justify the relief sought by plaintiff in this instance.

Finding no error in the district court's entry of summary judgment against plaintiff on her claims that the lease is void because of the rule against perpetuities and the doctrine of unconscionability, we will affirm as to those elements. Finding no jurisdiction for the decision on the restrictive covenants, the judgment on that claim will be vacated.