## Lewis *versus* Effinger.

30 281
126 601

30  281
d 20 SC  59
20 SC  60

A lease of lands, suitable for the breast of a mill-dam, for a term of 100 years, in which it is expressly provided that the lessee, his heirs and assigns, may hold the premises so long as he and they shall think proper, after the expiration of the term, at the same rent, with liberty to erect mills thereon, &c., on the faith of which the lessee makes extensive and valuable improvements, is not determinable by the lessor, after the expiration of the term, except on tender of compensation for such improvements.

ERROR to the Common Pleas of *Delaware county*.

This was an ejectment by Henry Effinger against George Lewis, Mordecai Lewis, and John Reece Lewis, for half an acre of land in the township of Nether Providence, in Delaware county.

Both parties claimed under a lease dated the 18th September 1750, from James Sharpless to James Crozer; the plaintiff under the lessor, and the defendants under the lessee. By this instrument Sharpless demised unto Crozer, his heirs, executors, administrators, and assigns, " a certain piece or parcel of land, situate and being in Providence township aforesaid, containing half an acre of land, to be opposite to James Crozer's land on the other side of Crum creek, and adjoining to the said creek, where the said Crozer shall think convenient, above the road leading from Darby, through Springfield, to Providence aforesaid, between the road and the first turn on the aforesaid Crum creek, being a laurel hill, with free liberty to join a dam to, and build one on the said ground, *and build or erect mill or mills*, and quarry stone and dig earth, as much as he shall think proper, for the said dam, on the said ground; together also with the liberty and privilege to overflow as much of the said Sharpless's land as he shall think proper, with water *for the use of the mills aforesaid*."

And it was also thereby covenanted by and between the said parties, " that the said James Crozer, his heirs and assigns, shall and may deliver up the said premises, farm and privileges, and every the aforesaid, any time during the term below mentioned, giving the said James Sharpless one year's notice beforehand; and also, it is agreed by the said parties, *that the said James Crozer, his heirs and assigns, shall and may hold the said premises, liberties and privileges aforementioned, as long as he and they shall think proper, after the below-mentioned term has expired, paying the said yearly rent below mentioned, in manner below mentioned*." To hold the same at the yearly rent of £3, payable on the 25th March annually, for the term of 100 years, from the 25th March 1751; with a covenant for quiet enjoyment.

The parties holding under this lease being the owners of the adjoining land on Crum creek, on the faith of this instrument erected valuable and extensive improvements; and the defendants

below, in whom the title of the lessee is vested by assignment, are the owners of two cotton factories, and a manufacturing village, which would be rendered useless for the purposes for which they are used, without the right to flood the plaintiff's land, as the existence of the water-power depends on such right.

The court below delivered the following charge to the jury, in which the facts of the case are fully stated:—

" On the 18th day of September 1750, James Sharpless and James Crozer owned in fee simple, adjoining tracts of land on Crum creek, in this county, the creek being the boundary line between them. On that day James Sharpless executed and delivered to the said James Crozer, an indenture of lease, wherein and whereby it was covenanted and agreed between them, that the said James Sharpless did demise to the said James Crozer, and to his heirs, executors, administrators, and assigns, a certain piece of land containing half an acre, opposite the said James Crozer's land, and adjoining the creek—its location being more particularly described in said lease—with free liberty to join a dam, and build one on the said ground, and build or erect a mill or mills, and quarry stone and dig earth, as much as the said James Crozer should think proper for said dam, on said ground, together also with the liberty and privilege to overflow as much of the said Sharpless's land as he shall think proper, with water for the use of the mills aforesaid. He, the said James Crozer, having and holding all the therein demised premises and privileges, from the day of the date, for and during the term of one hundred years. He the said James Crozer yielding and paying therefor, the yearly rent or sum of three pounds. It was further covenanted by and between the parties that the said James Crozer, his heirs and assigns, might deliver up the premises, farm and privileges at any time during the term, giving to the said James Sharpless one year's notice beforehand; and also, that the said Crozer, his heirs and assigns, might hold the said premises, liberties and privileges as long as he or they should think proper after the expiration of the said one hundred years, paying the yearly rent as aforesaid.

" By a series of deeds and conveyances, since the date of the said lease, the land, or a part thereof, embracing the half acre in question, has been transmitted to the present plaintiff, Henry Effinger, who holds the same, with all its rights and reversions, and by assignments on the indenture of lease, from the first lessee through divers owners of the Crozer tract, down to the present defendants, the rights, liberties, and privileges therein granted have been transferred to the said defendants. As the lease commenced on the 25th day of March 1751, the one hundred years, being the length of the term, expired, not counting the change of style, on the 25th of March 1851. Throughout that whole period,

it is now admitted, that the rent reserved was regularly paid, and that since the expiration of the term it has been fully tendered up to the spring of 1857. In pursuance of the authority granted in the lease to Crozer, he, and those holding under him, went on, erected a dam and built mills, which subsequently have been changed into cotton mills, two in number, worth, according to an intelligent witness, $11,500. In this condition of things, the plaintiff, owner and possessor of the Sharpless tract, with all its rights and liberties, and the defendants, · owning a small tract below, whereon are erected cotton factories, and holding, as they conceive, by the lease aforesaid, certain rights on the plaintiff's property, are before you, contending for their respective rights. It is somewhat difficult to understand the location and boundaries of the half acre of land for which this action is brought. The declaration of the plaintiff describes it as ' a certain lot of land situate in the township of Nether Providence, in Delaware county, containing half an acre of land, or thereabouts, opposite to land late of James Crozer, now of and in the possession of George Lewis, Mordecai Lewis and John Reece Lewis, on the other side of Crum creek, and adjoining to the said creek, above the road leading from Darby through Springfield to Providence, between the said road, and the first turn in the aforesaid Crum creek.' In the lease, in addition to the foregoing description, it is further stated as being ' a laurel hill,' and this may well increase the difficulty as to the location. So far as the main question in the cause is concerned, there can be no difficulty, however, in discovering the extent of the claim of the plaintiff, and the proper location thereof.

" In his second point, furnished me, he says :—' The erection of the dam-breast, making of the dam, quarrying of the stone, are evidence of the location of the said half acre; and the maintenance of the dam-breast, the reparation thereof, and the maintenance and use of the dam up to the present time, are evidence of the possession by the grantees and their assigns of the said ground now occupied by the dam-breast, the dam and the quarry.' This will show the claim now made by the plaintiff. I think this is true, and just so far as you may consider the proof of possession sufficient, the defendants have had, and still have such possession as will support the action of ejectment. The lease given in evidence, is a lease of the half acre of land to be located by the lease within the limits specified. The payment of rent by the present holders of the land, during the term mentioned in the lease, is evidence that the defendants were in actual possession of the premises mentioned in the lease, or so much thereof as was located aforesaid, and estops the defendants from denying their possession or our recovery of title. The lease is a lease of the half acre of land, with the privilege to open a quarry, and flood

[Lewis v. Effinger.]

land, which a tenant for years, independent of the grant of such privileges could not do without committing waste; and the said privilege is not an incident to the grant of the soil, and is not in the construction of the instrument to be separated from the principal subject of the grant.

"Under these views, my direction is, that you find for the plaintiff for so much of the one-half acre as in your judgment, from the evidence, the defendants were in possession of at the time of the institution of the suit.

"From the evidence the plaintiff would seem to be entitled to recover so much ground as is covered by the dam-breast, and the water of the dam west of the line, running along the middle of the creek, through the mill-dam, from the dam-breast to the middle of the bridge at the turnpike, and also the ground covered by the quarry at the west end of the dam-breast."

To this charge the defendants' counsel excepted; and the jury having found a verdict for the plaintiff in accordance with the instruction of the court, and judgment having been entered thereon, they sued out this writ, and here assigned such charge for error.

*E. Darlington* and *Broomall*, for the plaintiffs in error.—The notion of a determinate period being requisite to a lease for years has been very much broken in upon, as well as the notion that the power to determine a determinable estate must be co-existent in both parties: *Bac. Abr.* Leases, L.; Goodright v. Richardson, 3 *T. R.* 463; Doe v. Dixon, 9 *East* 15. Leases with covenant of renewal, and even of perpetual renewal, so common in the books, are innovations upon both the above principles: *Smith on Real and Personal Property* 537.

"A tenant who has laid out money on the mere *expectation* of a renewal of his term, or of not being disturbed in his possession, cannot, by such expenditure, give the character of a right to his imprudent expectation:" Pilling v. Armitage, 12 *Ves.* 85; Watson v. The Master of Hemsworth Hospital, 14 *Ves.* 333; Robertson v. St. John, 2 *Br. Ch.* 140. "Though, no doubt, if the owner fraudulently encourage the occupier of an estate to lay out his money in improvements thereon, the jurisdiction of a court of equity will attach to such a case:" Kenney v. Browne, 3 *Ridgw. P. C.* 518; Norway v. Rowe, 19 *Ves.* 159; Matts v. Hawkins, 5 *Taunt.* 23. "The tenant, under such circumstances, may be entitled, not merely to compensation for improvements upon, but even to be protected in the possession of the estate, for any term which he had encouragement to expect:" Shine v. Gough, 1 *Ball & Beat.* 444; Huning v. Ferrers, *Gilb. Eq. Rep.* 85. "And the court would feel disposed to presume everything that was necessary to protect

the tenant's possession:" Hume v. Kent, 1 *Ball & Beat.* 561; note to 7 *Vesey* 236.

The lease here was a perpetual one, terminable only at the will of the lessee: Cook v. Bisbee, 18 *Pick.* 527; Folts v. Huntley, 7 *Wend.* 210.

*Manly* and *J. J. Lewis*, for the defendant in error.—After the expiration of the term, the plaintiffs in error became either tenants at will, or from year to year; they seek to give to their lease the effect of a conveyance in fee: *Sheph. Touch.* 283; *Co. Litt.* 55 a; Mhoon v. Dazzle, 3 *Lev.* 414; 10 *Vin. Abr.* 396; 4 *Kent Com.* 111.

The opinion of the court was delivered by

PORTER, J.—This record starts a new question. Two men agree, in the most solemn form known to the law, one to demise certain premises, and the other to hold them, and pay rent. More closely considered, the instrument is a lease of land suitable for the breast of a dam, and the grant of an easement, namely, the right to overflow certain other land with water. In the body of the paper, it is expressly provided that the lessee, his heirs and assigns, may hold the said premises, liberties, and privileges, so long as he and they shall think proper, after the expiration of the term therein mentioned, on condition of paying rent. During the term, the lessee and his successors engaged in manufacturing enterprises unknown when the lease was signed, and for this purpose they erected extensive improvements at large cost. After a century had elapsed, they were notified to quit, and sued in ejectment. The court below, notwithstanding the stipulation quoted, thought the plaintiff entitled to recover the land occupied by the dambreast, and by the water of the dam west of a line defined in the charge. If the principle on which that opinion was founded be sound, it will fall with a heavy hand on the large manufacturing and mining interests of the country, in the conduct of which leases of this nature are extremely common, and we are bound to investigate it with care.

The ancient law was more favourable to this view than the modern. The earlier leases at will were all held at the will of the lessor. At a later period this modification was effected: " When a lease is made to have and to hold at the will of the lessor, the law implieth it to be at the will of the lessee also, for it cannot be only at the will of the lessor, but it must be at the will of the lessee also. And so it is when a lease is made to have and to hold at the will of the lessee: this must be also at the will of the lessor; and so are all the books that seem, *primâ facie* to differ, clearly reconciled:" *Co. Lit.* 55 a. In Lord Mansfield's day, a lease for seven, fourteen, or twenty-one years, as the lessee might choose, was held good for only seven years: *Bacon, Abr.*

title Leases, L.    Afterwards a lease for three, six, or nine years was adjudged a lease for nine years, determinable at the intermediate periods by *either* party : Goodwright *v.* Richardson, 3 *T. R.* 463.    It has since been settled that when a term of seven, fourteen, or twenty-one years has been appointed, and nothing said respecting its termination at the intermediate periods, the lessee only can determine it : Doe *v.* Dickson, 9 *East* 15 ; Dann *v.* Spurrier, 7 *Vesey* 231.

These decisions were pronounced in cases of ordinary letting, where the occupancy is an equivalent for the rent, and where, on the determination of the estate, the parties find themselves where they expected.    The present is a different case.    The lessee received from the hand of the lessor a clear and positive covenant of occupancy, first for a fixed term, and then for an uncertain one determinable only at the will of the former.    For this covenant he paid full consideration in the rent punctually discharged for a century, and subsequently tendered on the trial of the cause. He went further, and furnished an overwhelming consideration in the detriment which must flow from the destruction of improvements erected with the lessor's own knowledge and by his agreement ; for the water-power could have been purchased and employed for no other purpose.    To permit the tenant's expulsion from rights like these, without compensation, would violate all the analogies of the law ; for while a tenant who expends money on the mere expectation of renewing his term, cannot thus arm himself with a right, Pilling *v.* Armitage, 12 *Vesey* 85 ; Watson *v.* The Hospital, 14 *Vesey* 333 ; it is equally true, that an owner will not be permitted fraudulently to encourage the occupier of an estate to lay out his money in improvements ; Norway *v.* Rowe, 9 *Vesey* 159 ; Matts *v.* Hawkins, 5 *Taunton* 23 ; and the latter will even be protected in the possession of the estate for any term which he was thus encouraged to expect : Shine *v.* Gough, 1 *Ball & Beatty* 444.

In the case in hand, the lessee received, not encouragement, but express contract, for which he paid the price demanded, and more. We know of nothing in the law of Pennsylvania to prevent us from saying that he and his successors shall enjoy the benefit of this contract, and keep the land, so long as they pay the rent, or at the very least until compensation for the improvements thus made has been tendered.    Two of our sister states have taken the lead in nearly this direction.    The owner of a furnace sold it and leased the land on which it was erected, together with certain water privileges, to the purchaser, who covenanted to pay rent so long as he should keep the furnace on the land ; and this was held to be a lease, terminable at the will of the lessee only : Cook *v.* Bisbce, 18 *Pickering* 527.    A demise to A., his heirs and assigns, for such term or time as he shall pay rent, &c., and a covenant by

[Lewis v. Effinger.]

him for himself and heirs to pay rent and perform covenants, constitute a perpetual lease: Folts v. Huntley, 7 Wend. 270.

On the principles thus indicated, justice will be administered, and the symmetry of the law preserved, by deciding that the facts of the case, as they stood at the trial, did not entitle the plaintiff to recover.

Judgment reversed and a *venire facias de novo* awarded.