## Effinger *versus* Lewis.

A lease for a term of years, wherein it was provided that the lessee, his heirs, and assigns, might hold the premises so long as he and they should think proper, after the expiration of the term, at the same rent, is a perpetual lease at the will of the lessee.

Such a lease may be created under the common law of Pennsylvania, inasmuch as livery of seisin is not necessary to pass an estate which may be equivalent to a fee simple.

ERROR to the Common Pleas of *Delaware county*.

This was an ejectment by Henry Effinger against George Lewis and others, for half an acre of land, in the township of Nether Providence, in Delaware county.

The case was previously before this court, and is reported in 6 *Casey* 281, where the facts are fully set forth. Both parties claimed under James Sharpless, who, on the 18th September 1750, leased the premises in dispute, *inter alia*, to James Crozer, under whom the defendants claimed, for the term of 100 years, at the yearly rent of £3.

The lease contained the following covenant:—" And also, it is agreed by the said parties, that the said James Crozer, his heirs and assigns, shall and may hold the said premises, liberties, and privileges aforementioned, as long as he and they shall think proper, after the below mentioned term has expired, paying the said yearly rent below mentioned, in manner below mentioned."

The former judgment for the plaintiff having been reversed by this court, on a second trial, the court below instructed the jury upon the law of the case as laid down in 6 *Casey* 281; and a verdict and judgment having been given for the defendants, the plaintiff sued out this writ, and here assigned such charge for error.

[Effinger *v.* Lewis.]

*J. J. Lewis*, for the plaintiff in error, cited Pilling *v.* Armitage, 12 *Ves.* 85; *Shep. Touch.* 268, 238, 240, 283; 4 *Kent Com.* 111, 112; Lesley *v.* Randolph, 4 *Rawle* 123; Roe *v.* Lees, 2 *W. Bl.* 1173; Richardson *v.* Langridge, 4 *Taunt.* 131; Doe *v.* Barstow, 11 *Q. B.* 122; 1 *Reeve's Hist. Eng. Law* 303; 3 *Id.* 336; *Co. Litt.* 55 a.; *Id.* 57 a.; 10 *Vin. Abr.* 396; Mahoon *v.* Drizzle, 3 *Dev.* 414; Birch *v.* Wright, 1 *T. R.* 383; Jones *v.* Clerk, *Hard.* 47.

*E. Darlington* and *Broomall*, for the defendants in error, cited Cook *v.* Bisbee, 18 *Pick.* 527; *Bac. Abr.*, Leases L.; Goodright *v.* Richardson, 3 *T. R.* 463; Doe *v.* Dixon, 9 *East* 15; 3 *Bos. & Pul.* 399; 7 *Ves. Jr.* 231; *Smith on Real and Personal Property* 537; Pilling *v.* Armitage, 12 *Ves.* 78; Kenney *v.* Browne, 3 *Ridg. P. C.* 518; Norway *v.* Rowe, 19 *Ves.* 159; Matts *v.* Hawkins, 5 *Taunt.* 23; Shine *v.* Gough, 1 *B. & B.* 444; Huning *v.* Ferrers, *Gilb. Eq. R.* 85; Hume *v.* Kent, 1 *B. & B.* 561; 7 *Ves.* 236 n.; Folts *v.* Huntley, 7 *Wend.* 270; Liggins *v.* Inge, 7 *Bingh.* 693; 14 *S. & R.* 267; 2 *Watts* 470; 4 *Id.* 322; 6 *Id.* 510; 4 *Barr* 358; 6 *Casey* 281.

The opinion of the court was delivered by

LOWRIE, C. J.—Though we decided the principle of this cause a year ago, yet the eminent counsel of the plaintiff is so earnest in the conviction that we decided it erroneously, that he has brought it here again, and asks us to reconsider our opinion; and we freely concede to him a further expression of our views.

This lease is for one hundred years, with the right in the lessee, his heirs and assigns, to hold the premises at the same rent, as long thereafter as he or they shall think proper; and the counsel insists that, after the hundred years, this becomes a lease at the will of one party, and therefore of either. He urges that such was, for several centuries, the common law of England; and that, therefore, it is now a part of our common law, and that we have assumed legislative functions in setting it aside.

But this argument involves the assumption that the laws of England are law in all colonies of England, and in the states growing out of them, if they have not been repealed by statute. If this were so, then the king's letters patent to colonists were little else than waste paper; for he had no authority to dispense with those laws, and to allow us to legislate for ourselves. Then all the laws of England existing when the colonies were formed, were law here, and very few of them have since been expressly repealed. Then the parliament was our only legislature, and all our old provincial statutes are void, and the feudal law, wager of battle, wager of law, crimes against the church, and thousands of other laws, known and unknown, still remain as part of our law.

[Effinger v. Lewis.]

This is not so. A people emigrating to a new country naturally carry with them their own habits, customs, and ideas, and the traditions, language, and books of their native land; and out of these grow, more by custom than by statute, new institutions adapted to their old ideas and customs, and also to their new circumstances; and hence greatly resembling, while greatly differing from, the laws which they left behind them. The old laws do not follow them because of their inherent authority as law; yet they are presumed to remain in force by tacit adoption, if consistent with the new circumstances of the people, and with the new customs and ideas to which these new circumstances give rise.

And this argument further involves an entire forgetfulness that common law grows out of the general customs of the country, and consists of definitions of these customs and of those ancillary principles that naturally accompany them, or are deduced from them. The common law of one country or century is not necessarily the common law of another, because customs change. This is a sort of law that is and must be recognised as valid in all countries, and it is created by the people themselves, and not by acts of parliament. Its precepts abound in the Roman Pandects, and their authority is thus defined, *Diuturna consuetudo pro jure et lege observari solet*, 1, 3, 33; *non minus quam ea jura quæ scripta sunt*, 35; *et non solum suffragio legislatoris, sed etiam tacito consensu omnium per desuetudinem abrogentur*, 32. And very similar principles are often expressed in Coke, 1 *Inst.* 97 b., 110 b., 113 a.; *Bracton* 1, 3, 2, and 1, 5, 5. Yet the customs of a nation are very enduring institutions, while those of localities, trades, occupations, and families are comparatively transient.

Common law, then, is founded on popular custom, and when the judges declare it, they merely discover and declare what they find existing in the life of the people as the rule of their relations; and it is thus that general customs have always found their way, as law, into our treaties and reports. If the custom passes away, the laws that grow out of it go with it, on the principle, *Cessante ratione, cessat lex.*

And when Coke says, that the reason of a law is the life of it, this must not be understood as declaring, that the law fails because the reason of the custom is lost, but because the custom itself has passed away; for customs always endure long after the reason and circumstances out of which they grow have ceased. The law depends on the endurance of the custom, and not of the original cause of the custom.

Now if the law relied on here depended on a custom that has passed away, it is not we, but the people themselves, that have set aside the law; and it would be mere usurpation in us to declare that it is still in force.

That law did depend on a custom that has passed away. An

estate at the will of the grantee, his heirs and assigns, is equivalent to a fee simple, and such an estate could not, by the old customs, be conveyed without livery of seisin. By the same customs, there could be no livery of seisin under a lease, but a mere taking of possession. Land granted by livery of seisin, without defining the quantity of the estate, was treated as a life estate. Where there was merely a delivery of possession, without defining the term, there arose only a tenancy at will. For want of livery of seisin, and the form of conveyance proper to that ceremony, it was necessary to treat an estate at the will of the grantee, as being also at the will of the grantor, else a fee simple might be granted in a form that pertained to the lowest order of estates; and this the customs of that day did not allow.

Now and here, it is otherwise. With us, a fee simple may be granted without livery of seisin, as well as a lease for years, or at will. Then, there was a public law for such transactions, which controlled the form of private contracts, and the maxim applied, *Privatorum conventio jure publico non derogat.* Now, parties may contract in writing in what form they please, and the maxim is, *Conventio vincit legem.*

There is now, and was when this lease was made, nothing to prevent a perpetual lease of land without livery, or a lease that may become perpetual at the pleasure of the lessee. The decisions, therefore, which recognise the right of parties to contract for an estate in land, by lease determinable only at the will of the lessee (18 *Pick.* 517 ; 7 *Wend.* 210), are not contrary to our present common law. Nor are those which decide that a lease for 7, 14, or 21 years is not properly a lease at will, but for a term of years, determinable by the lessee alone at the first or second period : 9 *East* 15 ; 3 *Bos. & Pul.* 399. Such leases never were regarded as properly leases at will : 13 *H.* VIII. 16 ; 14 *Id.* 10. As leases, not at will, but from year to year, or from term to term, they are not unassignable. They are property, so far as independent of the pleasure of another, and as such a subject of sale and transfer.

There is nothing, therefore, to prevent us from giving effect to this contract according to the intention of the parties. If they meant to create an estate that should endure so long as the grantee, his heirs and assigns, should desire to keep it at the rent agreed upon, then such is its character; and this silences all the minor objections brought to bear on the title. That they did mean such an estate, is quite plain from their agreement.

It is, in terms, a demise and grant to James Crozer, his heirs and assigns, for one hundred years, and as much longer as he and they may think proper, at an annual rent of three pounds, and with leave to him or them to surrender the premises at any time during the term, on giving one year's notice ; and the grantor, for

[Effinger v. Lewis.]

himself, his heirs, executors, and administrators, covenants with the grantee, his heirs and assigns, that they shall quietly enjoy and hold the premises and privileges granted, against the grantor or any person claiming under him.

It would be darkening counsel with words, to attempt to prove that this means to grant an estate to be held and assigned at the will of the grantee and those holding under him. The parties have so contracted, and the law does not forbid it.

In speaking of the improvements, in our former opinion, we did not mean to say that they could affect the title; but only to indicate, in aid of our interpretation, that it was quite improbable that the parties contemplated the grant of a water privilege, at the will of the grantor, which was to furnish the power to a mill to be put up by the grantee. No such a grant would be thought of in connection with such improvements. But the evidence of improvements has no influence on the decision. We may add, that if the plaintiff's argument is valid to determine the lease at the end of a hundred years, it would have been good to terminate it at the end of any one year, for the grantee had that right.

Judgment affirmed, and record remitted.