## Mellor, Appellant, *v.* City of Pittsburg.

*School law—Increase of debt—Taxation—Statutes—Repeal—Municipalities.*

The 63d section of the Act of February 12, 1869, P. L. 150, in so far as it authorized subschool districts in the city of Pittsburg to levy taxes, or required the levy of the same for school buildings, is not repealed by the subsequent Acts of April 20, 1874, P. L. 65, March 22, 1877, P. L. 16, March 15, 1878, P. L. 7, June 12, 1878, P. L. 182, and May 24, 1881, P. L. 29.

There is now in the city of Pittsburg no regular annual school tax levied which can be the measure of the special tax which may be levied by the subdistrict for building purposes.

If the contracts and engagements of a school district do not overreach its current revenue, no objection can be made to them, whatever the indebtedness of the district may be.

Argued Nov. 6, 1901. Appeal, No. 144, Oct. T., 1901, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., April T.,

1901, No. 603, on bill in equity in case of John Mellor, Elmer E. Siebert, George Collier, Alexander Waters and Herman Schaefer v. City of Pittsburg, The Central Board of Education of the City of Pittsburg, The Mount Albion Subschool District of the Eighteenth Ward, Pittsburg, and E. R. Tor-rence, Treasurer of the City of Pittsburg. Before McCol-LUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.     Affirmed.

Bill in equity for an injunction.

SHAFER, J., filed the following opinion:

### FINDING OF FACTS.

1. The central board of education of the city of Pittsburg, one of the defendants, was established by an act of 1855, which is supplied by the Act of February 12, 1869, P. L. 150.    The general effect of which legislation was to make the whole city of Pittsburg a single school district for the purpose of paying expenses, of hiring teachers and other like expenses and leave each of the wards of the city, a school district by the name of subdistrict expressly charged with the duty of providing school buildings and maintaining the same.

2. The act of 1869, section 63, provides that the several boards of the subdistricts may, at any time, not oftener than once in each school year, levy a special tax, not exceeding the amount of the regular annual school tax for such year, and directing the money so raised to be solely applied to the purchase of the grounds, erection of buildings, etc.    Section 64 provides that the several boards of directors of the subdistricts shall notify the central boards of the rate of taxation levied by them as aforesaid and requires the central board to cause the amount thereof to be added in a separate column to the tax duplicate.

3. The Mt. Albion subschool district, one of the defendants, is coterminous with the eighteenth ward of the city of Pittsburg and is one of the subdistricts referred to in the act of 1869.

4. The central board of education in the year 1901, ascertained and determined that the amount of money required to be raised by taxation for conducting the schools of the city was

$831,800 and was certified to the councils of the city of Pittsburg and the said sum was added by said councils to the aggregate of the tax required for the city for the year 1901.

The Mt. Albion school district has levied a special tax of eight and two tenths mills on the dollar on the assessed valuation of the taxable property in the eighteenth ward for school building purposes and has certified the same to the central board of education, by which the same was certified to the city councils. Thereupon an ordinance of the city of Pittsburg entitled "An ordinance levying taxes and assessing water rents for the fiscal year beginning February 1, 1901," was passed and approved by the mayor on March 7, 1901, whereby a tax of fifteen mills on the dollar was levied on all taxable property in the city of Pittsburg, for the purpose of raising revenue for the payment of interest and to pay the ordinary current expenses of the city.

In addition taxes were levied upon the subschool districts, for the purpose of defraying interest on bonds and of sinking funds and for the miscellaneous purposes of the subschool districts in the several wards of the city, these taxes being in amounts varying from one half mill to eight and two tenths mills, just the tax assessed by the said ordinance in the Mt. Albion subschool district of the eighteenth ward.

5. The total assessed valuation of the property in the city of Pittsburg is $295,000,000, and the total assessed valuation of the property in the eighteenth ward is $7,354,680.

6. The Mt. Albion subschool district had, on or about April 17, 1900, a bonded indebtedness amounting to $144,000, issued under the terms of the Act of April 20, 1874, P. L. 65, and the Act of April 13, 1897, P. L. 17, on or about that date and at various times thereafter during the year the subschool district, for the purpose of completing a schoolhouse, made various contracts, set out in the tenth paragraph of plaintiff's bill amounting to about $40,000, and it is alleged by plaintiffs that this was an illegal increase of indebtedness beyond the limit of two per cent allowed by law. None of these contracts were completed during the year 1900 and none are yet completed, and we find that the same are within the limit of current revenue in taxes and that the levy heretofore made is suffi-

cient. to pay said contracts in full as they will, from time to time be performed and the current expenses of the district.

### CONCLUSIONS OF LAW.

1. The legislation which, it is claimed has affected the rights and duties of the subdistricts, since the act of 1869, consists of the following acts, the first, the Act of April 20, 1874, P. L. 65, and the subsequent acts empowering municipalities to borrow money and directing the levy of taxes for the payment of the same; second, the Act of March 22, 1877, P. L. 16, and the supplements of March 15, 1878, P. L. 7; third, the Act of June 12, 1878, P. L. 182; fourth, the Act of May 24, 1881, P. L. 29.

2. The act of 1877, above referred to, was entitled "An act in relation to cities of the second class, providing for the levy, collection and disbursements of taxes and water rents," and provided that the annual levy of taxes should be based upon full statements of the receipts and expenditures of all departments including education, school and poor board and authorize the finance committee of councils in lieu of any existing authority in relation thereto, to make an estimate of the various sums of money which, in their discretion, will be required to defray all the various expenses of conducting the various departments including the school or boards of education, and this to be certified to councils to be accepted or modified by them. The act of March 15, 1878, supplement to the act of 1877, provided that the sums appropriated for educational, school and poor purposes, shall be paid out upon warrants issued by the educational, school or poor boards. The act of June 12, 1878, above mentioned, provides that the central board of education shall ascertain and determine the amount of money necessary for conducting the schools of the city and certify the same to councils, and councils shall add the same to the aggregate of the taxes. And this act also declares it to be the true intent and meaning of the act to which it is a supplement that none of the powers theretofore belonging to the central board of education and the various school boards of the said cities prior to the passage of such act shall be impaired or affected in any manner, except in relation to the levy and collection of taxes. It is argued by counsel for defendants that the effect of these acts is to place on the central board the

power to ascertain and determine the amount necessary for conducting the schools, and the conducting of the schools means not only the payment of the teachers and similar expenses, but the provisions for buildings, grounds and all things necessary for housing and accommodating the pupils and the power of the subdistrict given by the 63d section of the act of 1869, to levy taxes is taken away, and they cite the case of the Commonwealth against Shaw, 96 Pa. 274.

If we agree with counsel for defendants in this respect we should be of the opinion that the central board of education was bound to levy taxes for the purchase of lands and the building of schoolhouses upon the city at large, and that the taxes levied of eight and two tenths mills on the dollar on taxable property in the eighteenth ward was wholly illegal, not for the reason that it exceeded the amount of the regular annual school tax, but because no other authority appears to have been granted to the central board of education to levy special taxes upon parts of the city different in amount from those levied upon the rest of the city. As to the case of the Commonwealth against Shaw supra, although there are expressions in the opinion of the late president judge of this court favorable to the contention of counsel, yet all that was decided in the case was that a mandamus could not be granted to compel the central board of education to do that, which if they had the power to do, was a matter of discretion.

3. We are of the opinion, however, that the 63d section of the act of 1869, so far as it authorized the subdistrict to levy taxes or requires the levy of the same for building purposes is not repealed by any of the acts above mentioned, but, on the contrary, that the legislative interpretation contained in the 3d section of the act of June 12, 1878, in addition to its legislative force, is a correct interpretation of the act and the subdistrict being required to build and maintain schoolhouses sufficient for the needs of the district. It is not to be supposed that the legislature means to take away from the subdistricts the power to levy taxes for that purpose, although the mode of levying the same might be modified.

4. By the Act of May 24, 1881, P. L. 29, above referred to, an attempt was made to settle the question which appears to have been raised as to whether or not the 63d section of the

act of 1869 was still in force, and the act provides that the several boards of directors of the subschool districts shall have power to purchase ground and erect buildings, etc., to borrow money and provide for the payment of it, and levy taxes for such purposes as fully as such power existed and belonged to said boards prior to the act of 1877.

It is alleged by defendants that this act is unconstitutional in that it violates section 6, article 3 of the constitution in attempting to revive a law by reference to its title only, without re-enacting and publishing it at length, and this position seems to be well taken, at least so far as the act undertakes to define the powers granted by reference to those which existed before the passage of the act of 1877, and that is all that concerns us in this case.

5. The provision of the 63d section of the act of 1869, limiting the special tax to the amount of the regular annual school tax was copied into the act of 1855, creating the central board of education, from the general school law of 1854, where it referred to a tax levied by the same body as that which levied the special tax and was copied from the act of 1855 into that of 1869, under both of which acts the central board of education levied a regular annual school tax, or that which might properly be called such, being a certain millage upon the taxable valuation which was required by law to be ascertained before the levy of the special tax. As the law now stands, however, since the act of 1878, the central board of education does not levy any school taxes but presents to councils a lump sum, which councils are required to add to the aggregate of taxes required for cities and appropriate the same to the use of the central board and, as above stated, the councils of the city of Pittsburg levied a tax of fifteen mills for general city purposes, which includes the proportion to the central board of education. It is true that if the subdistrict board can ascertain before levying their taxes for building purposes the exact valuation of the property of the whole city for taxable purposes, and the central board of education as certified to the city councils the amount deemed by them necessary for conducting the schools, it can by a mathematical calculation arrive at the percentage of the amount as of the whole taxable valuation of the city, and in one sense this would represent that which was

originally intended by the regular annual school tax. No machinery appears, however, to be provided by which the subdistrict board is to be informed of the various elements of the problems thus presented to them. We are of the opinion therefore that there is now in the city of Pittsburg no regular annual school tax levied which can be the measure of the special tax which may be levied by the subdistrict and that the part of the 63d section of the act of 1869, which refers to the amount of such annual school tax has been repealed by implication or become inoperative.

6. The act of 1874 and its supplements relating to the indebtedness of the municipalities above mentioned is a general act giving power to all the bodies to which it relates, including the subdistricts of the city of Pittsburg to borrow money, and requires the levy of a certain amount of taxes in proportion to the money borrowed, for the payment of the same, and this act substitutes the methods and limitations theretofore existing in different portions of the state and substitutes its own provisions for them: Chalfant v. Edwards, 176 Pa. 70. As the district has a bonded indebtedness of over $140,000, there must be levied a considerable tax at the time of the borrowing of this money of the amount of which we are not informed and which is included in the eight and two tenths mills above mentioned. For anything that clearly appears in the evidence the whole of this eight and two tenths mills may have been originally levied in the provisions of the act of 1874 and its supplements. We cannot in any event declare the whole of the levy of eight and two tenths mills illegal, and if any part of it is not legalized by the act of 1874, we cannot enjoin the collection of such part even if otherwise illegal, because we cannot ascertain its amount.

7. The view we have taken for regulation above mentioned relieves us from the necessity of discussing the constitutionality of the act of 1877, which is claimed by plaintiff's counsel to be unconstitutional because the title does not allude to the subject of schools, and the school districts were not, at the time of the passage of the act, departments of the city government, being districts of the state having a separate corporate existence.

8. It was stated upon the arguments and not denied that the

practice of levying a special school tax by the subdistricts for building purposes, as was done in this case has been universally adopted in all subdistricts of the city for upwards of twenty years and that in many cases heretofore and in the ordinance levying the tax complained of for the present year, the taxes levied by the subdistricts were larger than the proportion borne by the central school board of education's estimate to the whole value of the city and that the same has not been heretofore questioned. It is certain that very great confusion would arise in many subdistricts of the city if the interpretation of the various acts in question claimed by the plaintiffs were to be adopted, and while this would not be a reason for not adopting that interpretation if it were clearly right, it is strongly persuasive that it should not be adopted if a reasonable interpretation sustaining the present practice can be found.

9. Under the above findings of fact as to the contracts of the school board, which are alleged to be illegal as creating an indebtedness beyond the amount allowed by law, we think there is no question that the subdistrict is acting within its rights and that the contracts complained of do not create an illegal debt: Wade v. Oakmont Borough, 165 Pa. 479; City of Erie's Appeal, 91 Pa. 398. Being of the opinion therefore that the tax of eight and two tenths mills complained of is not excessive or illegal and that the contracts above mentioned do not constitute an illegal increase of debt, the plaintiffs are not entitled to any of the relief prayed for and the bill is dismissed at their costs.

Let a decree be drawn accordingly.

*Error assigned* was decree dismissing bill.

*H. T. Watson,* for appellants.

*W. B. Rodgers,* with him *A. E. Goss* and *J. E. McKelvey,* for appellees.

PER CURIAM, January 6, 1902:

We have carefully examined and considered the findings of fact and conclusions of law in this case, and are satisfied that the learned judge of the court below has committed no error

in the findings and conclusions referred to.   The exceptions filed by the plaintiffs' counsel were reviewed and on due consideration dismissed.   Upon hearing had on bill, answer and testimony, and on the findings, conclusions and exceptions argued, it was adjudged and decreed that the bill be dismissed at the costs of the plaintiffs.

Decree affirmed.