From Charles P. Ulrich, Selinsgrove, Pa.

---

## Mansfield Boro. School Dist. v. Mansfield High School Ass'n.

*School law—Construction of high school building—Lease of building from private corporation—Uniform Declaratory Judgments Act of June 18, 1923— Sale of land without adequate consideration.*

1. Where a school district is in urgent need of a high school building, but cannot construct the same without the expenditure of more money than can be raised by a legal bond issue, it may lease such a building from a corporation of the first class organized by citizens of the district to raise the money needed, and such lease may provide for a term of forty years at a rental of six and four-tenths per cent. upon the actual cost of the building, payable out of current revenues which are sufficient to meet such annual outlay.

2. Such a reserve rental is not a debt within the meaning of section 8 of article ix of the Constitution, and, therefore, illegal.

3. Under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, the court has jurisdiction to pass upon the legality of such contract before its execution.

4. If, however, it appears that, as an incident to the lease, the school district is to convey to the corporation a lot worth $1200 by an absolute deed in fee for the nominal consideration of $1, the court will refuse to approve the lease and dismiss the petition, without prejudice, however, to the petitioner to renew its petition when the objectionable provision has been removed.

5. It seems that, where a fatal irregularity in the incorporation of the company intending to lease the building to the school district existed when the original petition was filed, amendments based upon the original proceedings do not cure the fatal defect.

Petition under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 340. C. P. Tioga Co., May T., 1926, No. 4.

*H. K. Mitchell,* for plaintiff; *Crichton & Owlett,* for respondent.

*David Cameron* and *Harvey B. Leach,* for taxpayers.

*F. H. Rockwell* (of *Rockwell & Rockwell),* for Department of Public Instruction.

WHITEHEAD, P. J., 29th judicial district, specially presiding, Sept. 21, 1926.— The original and amended petitions filed in this case allege, *inter alia:*

VOL. 9—8

1. That the above-named plaintiff, the Mansfield Borough School District, is greatly in need of a high school building in order to furnish proper and adequate facilities for the education and recreation of children of school age residing in said district.

2. That the said school district cannot construct a building adequate to provide for the needs of said high school and which will conform with the requirements of the Department of Education of Pennsylvania without expending more money than can be raised by said district through a bond issue, either with or without an election.

3. That the respondent, the Mansfield High School Association, alleges that it is a corporation of the first class and formed for the purpose of supporting education in Mansfield Borough, Tioga County, by providing a high school building for the use of the said school district of said borough without profit to said association.

4. That said respondent has offered to erect and construct a building suitable to the needs of a high school and lease the same to the plaintiff for a period of forty years at an annual rental not exceeding 6 4/10 per cent. upon the actual cost of said building.

5. That because said school district is greatly in need of a school building to accommodate its high school pupils, and owing to its inability to raise a sufficient amount to build a suitable building for that purpose by an increase of its bonded indebtedness, the school board of said district unanimously passed a resolution to accept said offer and authorized and empowered the president and secretary of said board to enter into a contract with said respondent agreeably to said offer.

6. Agreeably to said resolution and offer, said Mansfield High School Association and said school board have entered into a contract under which the said association has agreed to build, erect and construct the necessary high school building needed by the said district, and provide the same with suitable heating, ventilating, plumbing, lighting, furniture and equipment necessary to make said building suitable and ready for occupancy for the high school of said district at a cost not to exceed the sum of $80,000, and to lease the same to the said school district for a term of forty years at an annual rental of 6 4/10 per cent. upon the actual cost of said building, and the said school district has agreed to so lease the said building at the said rental.

7. The said mutual contract, in addition to the provision for the erection and leasing as aforesaid, further provides as follows, viz.: Said building to be built in accordance with plans and specifications to be prepared by some competent architect or architects selected by the school district with the approval of the said association.

8. That the petitioner alleges that it is able to pay from current revenues arising from taxation within the legal limit the amount of the annual rental required to be paid for the proposed school building under said contract, as well as all other necessary, proper and legal current expenses of said school district.

9. It is further alleged in said petition that some taxpayers of the School District of the Borough of Mansfield have questioned the validity of the resolution of the school board and of the contract made in pursuance thereof, and that, because of this, the petitioner is desirous of having the validity of said resolution and contract determined by the court in accordance with the provisions of the Act of June 18, 1923, P. L. 840, known as the Uniform Declaratory Judgments Act.

10. Upon presentation of said petition, the court fixed a time for hearing and the petitioner was directed to give notice of said hearing to the Mansfield High School Association and to the Superintendent of Public Instruction of Pennsylvania at least fifteen days before the date fixed for hearing, and that a notice of said hearing be published in the Mansfield Advertiser at least three consecutive weeks prior to the date of said hearing.

11. The Mansfield High School Association filed an answer to said petition, alleging, *inter alia,* that it was desirous of assisting the school district and would erect and construct a building as provided in paragraph 6, *supra,* but that because said building, when constructed, would be unsuitable for any use except for school purposes, the respondent would only erect it on assurance of a long-term lease; that is, for a term not less than forty years.

12. At the time of this hearing, Feb. 24, 1926, the Honorable David Cameron and Harvey B. Leach, Esq., representing certain taxpayers of Mansfield Borough, requested that they be allowed to file a petition to intervene, which petition was allowed by the court and directed to be filed.

13. Counsel for the alleged taxpayers then moved the court to dismiss the petition filed by the school district for the following reasons, viz.:

1. The court has no jurisdiction to declare the legality of the contract proposed to be entered into by and between the Mansfield Borough School District and the Mansfield High School Association.

(a) The pleadings do not set forth a controversy either of law or fact between the said Mansfield Borough School District and the Mansfield High School Association.

(b) There are no rights, status or other legal relations disclosed by the petition wherein further relief is claimed or can be claimed or can be declared by the court, as both parties to the proceedings ask for the same judgment.

(c) There is no contract disclosed by the petition under which the court can declare rights, status or legal relations.

(d) The petition does not set forth any lawful need of a high school building by the Mansfield Borough School District that can be supplied under any declaratory judgment that might be given under the pleadings in this case.

(e) The petition does not allege that the high school building is not sufficient to supply all the lawful needs of the said school district.

2. The contract in this case, if declared by the court to be legal, would result in an unlawful increase of the indebtedness of the municipality of Mansfield Borough School District. The designation of the unlawful increase as "rent" does not make the proposed increase lawful.

3. The board of school directors of said district cannot lawfully make a lease for a term of forty years, and especially on the terms proposed.

4. The Board of School Directors of the Mansfield Borough School District cannot lawfully convey to said association the lands belonging to the said district for a nominal consideration.

5. The school directors of said school district cannot purchase lands for the purpose of conveying them to the Mansfield High School Association for a nominal consideration or otherwise.

6. There is no description of the land proposed to be conveyed to the Mansfield High School Association now belonging to the Mansfield School District. Neither is there a statement of the valuation thereof. Neither does it set forth a need that the petitioners have the power to supply. The board of school directors of said district have no power to execute or carry out the provisions of the contract with the Mansfield High School Association set forth in Schedule A attached to and made a part of the contract.

7. The board of school directors of said school district has no power to execute or carry-out the contract with the Mansfield High School Association as set forth in Schedule C attached to and made a part of this petition.

After argument of counsel, this motion to dismiss was refused.

14. Counsel for taxpayers then filed an answer to plaintiff's petition, which answer contains twenty-six paragraphs, and which will be hereafter referred to.

15. On June 29, 1926, by request, the Department of Public Instruction, by its counsel, F. H. Rockwell, Esq., was allowed to intervene.

16. Counsel for taxpayers then moved the court to dismiss the original and amended petitions for the reason that, at the time the original petition was filed, the Mansfield High School Association was not a legally constituted association, for the reason that it had not complied with the requirements of the act of assembly prior to its filing its petition, and that, therefore, its charter was mistakenly granted. This motion was held in abeyance until final disposition of this case.

17. Other answers, motions and amended petitions were filed, all of which will be considered in the final disposition of this case.

## Discussion.

From the petitions and answers and the allegations contained therein, it appears that the School District of the Borough of Mansfield is greatly in need of a high school building in order to furnish proper and adequate facilities for the accommodation of children residing in said district who are ready to enter a high school; that, while a building is needed for such purposes, the borough cannot construct the same without the expenditure of more money than can be raised by said district from a bond issue, either with or without an election; that the school board of said district has unanimously agreed that a building is necessary, yet, if confined to a construction of such building, the needs of the children who should now be in a high school would not be provided for because of the financial inability of the school board to raise sufficient money for the construction of a building sufficiently large and adequately equipped for the purpose.

Under these conditions and to the end that the needs of the school district might be met, a number of generous citizens associated themselves together, secured a charter for a corporation of the first class and then said corporation offered to construct such a building as would meet the requirements of the school district at a cost not to exceed the sum of $80,000, provided the school board of said district would rent the building for a period of forty years at an annual rental of 6 4/10 per cent. of the cost. This offer was accepted by the school board and a contract covering the conditions entered into by the parties.

Briefly, the contract provides that the Mansfield High School Association, the corporation aforesaid, will construct a building and furnish same complete for school purposes, costing not more than $80,000, on condition that the Mansfield Borough School District, by its board of directors, agree to rent the same for a period of forty years at an annual rental of 6 4/10 per cent.

To such a contract the objections supra, as well as later objections, have been filed.

While these objections raise a number of questions, yet counsel for all the parties of record agree that all of the questions raised can be stated in propositions as follows:

1. Does the Act of Assembly of June 18, 1923, P. L. 840, and known as the Uniform Declaratory Judgments Act, provide for disposition of issues such as are raised in this case?

2. Is the said Uniform Declaratory Judgments Act unconstitutional?

3. Can a school board enter into a lease for a school building for a term of forty years under conditions such as are set out in these proceedings?

4. Is the rental reserved in the contract under the conditions of this case a *debt* within the meaning of section 8 of article IX of the Constitution of this State and, therefore, illegal?

5. Admitting that the incorporation of the Mansfield High School Association, the respondent, was, at the time of the filing of the original petition, an error, would an incorporation of an association of the same name at a later date, and after most of the pleadings had been filed, cure the original defect?

6. Admitting that the school board had agreed to contract to sell and convey to the respondent a piece of land of the value of at least $1200 for the price and sum of $1, without any conditions or reservations, would such sale be such an abuse of official discretion as to void the contract?

The first and second propositions are clearly disposed of in Kariher's Petition, 284 Pa. 455.

In the case at bar, the school board was about to enter into a contract involving many thousand dollars, all of which must be raised by taxation.

The taxpayers, alleging that this act was illegal and invalid, and for other reasons, objected to this contract.

The High School Association, the respondent, because of the uncertainty of its right as alleged by the taxpayers, would not proceed until the legal status of the contract was established.

Under these conditions, a real controversy existed, and a declaratory judgment would be *res judicata* of the points involved.

In Kariher's Petition, 284 Pa. 455, the court say, in paragraph 5 of the syllabus: "A real controversy must, however, exist; moot cases will not be considered, and the declaratory judgment is *res judicata* of the points involved."

This disposes of the first and second questions in favor of the plaintiff.

The third proposition, viz.: Can a school board enter into a lease for a school building for a term of forty years under conditions such as are set out in these proceedings?

The court is convinced that the school district is empowered to enter into such a lease.

The instant case justifies this conclusion.

Here the school board finds as a fact that a high school building is necessary, and yet it cannot construct such building because of financial inability. The board has the opportunity, however, of leasing a building that will meet all of the requirements of the school district, providing it will agree to rent the building for a term of forty years.

After due consideration, the members of the board unanimously, and very wisely, agree that the best interests of the school district will be conserved by accepting said offer.

Under section 401 of article IV of the Act of May 18, 1911, P. L. 309, 329, it is provided that the board of school directors in any school district *shall* establish, equip and maintain a sufficient number of elementary schools, etc., and *may* establish high schools, etc., as they, in their wisdom, may see fit to establish. Whether the word "may," as used in this section relating to the estab-

lishment of a high school, should be construed as "shall," is not necessary to determine in this case, although we believe that whenever the school directors unanimously decide in their wisdom that a high school is necessary, the erection or the leasing of such a building *should be mandatory.*

In the case at bar, the school directors unanimously decided that a building to be used for high school purposes was necessary, and that such a building could be secured by lease, providing the lease was for a term of forty years.

A building being necessary and the hands of the school board being tied, so far as its construction of a building is concerned, and the law making it a duty of the board of school directors to furnish suitable and properly equipped buildings to meet the actual necessities of the school district, we can see no good reason why an offer to lease a building, as above stated, should not be accepted.

The intervening parties allege that this lease cannot be entered into because of the length of term.

Counsel do not call the attention of the court to any law in this State prohibiting a long-term lease, neither do they support their claim by any citation.

It is true that a municipality cannot enter into a long-term contract when such contract is in derogation of the police powers of the municipality, but a contract relating alone to business affairs of the municipality stands upon a different bottom.

So far as this court can find, there is no constitutional or statutory provision in Pennsylvania limiting the time for which leases may be made.

In 18 American and English Enc. of Law (2nd ed.), 611, it is stated:

"Lord Coke states that, 'by the ancient law of England, for many respects, a man could not have made a lease above forty years at the most, but then it was said that by long leases many were prejudiced and many times men disherited, but that ancient law is antiquated.'

"Blackstone states that this ancient law, if it ever existed, was soon antiquated, and that terms for three hundred or a thousand years were certainly in use in the time of Edward III, and probably Edward I. And at the present, except by special statutory or constitutional provisions, there is certainly no limitation upon the time for which leases may be granted. A lease does not suspend the power of alienation and, therefore, leases for long terms are not in violation of the law against perpetuities."

In Lewis v. Effinger, 30 Pa. 281, a lease of lands was entered into for a term of 100 years, with a proviso that the lessee might hold the premises as he . . . shall think proper, after the expiration of the term. This lease was held to be binding upon the parties.

This case was again before the court in 32 Pa. 367, and, on pages 370-371, the court say:

"There is nothing, therefore, to prevent us from giving effect to this contract according to the intention of the parties. If they meant to create an estate that should endure so long as the grantee, his heirs and assigns, should desire to keep it at the rent agreed upon, then such is its character, and this silences all the minor objections brought to bear on the title. That they did mean such an estate is quite plain from their agreement.

"It is, in terms, a demise and grant to James Crozer, his heirs and assigns, for 100 years, and as much longer as he and they may think proper, at an annual rent of three pounds, and with leave to him or them to surrender the premises at any time during the term on giving one year's notice, and the grantor, for himself, his heirs, executors and administrators, covenants with

the grantee, his heirs and assigns, that they shall quietly enjoy and hold the premises and privileges granted against the grantor or any person claiming under him.

"It would be darkening counsel with words to attempt to prove that this means to grant an estate to be held and assigned at the will of the grantee and those holding under him. The parties have so contracted, *and the law does not forbid it.*"

The court then explains why improvements were mentioned in its former opinion. It states that this was only intended to indicate what the court thought of improvements.

In Myers *v.* Kingston Coal Co., 126 Pa. 582, the court, on page 601, say: "As it is not clear, however, that the court did actually have its attention directed to this point, we will add here that the cases of Lewis *v.* Effinger, 30 Pa. 281, and Effinger *v.* Lewis, 32 Pa. 367, settle the validity of a lease for a term certain, and thereafter to continue at the will of the lessee." See, also, Black et al. *v.* City of Chester, 175 Pa. 101; Metropolitan Electric Co. *v.* City of Reading, 175 Pa. 107; Seitzinger *v.* Tamaqua Borough et al., 187 Pa. 539.

In Muncy Electric Light, Heat and Power Co. *v.* Peoples' Electric Light, Heat and Power Co., 218 Pa. 636, the court, on page 641, say: "Instead of expending the public money in building a plant, it accepted the offer of the appellee to build the plant in consideration of a franchise which was to be exclusive for ten years. It was a valid exercise of the borough's contractual power, on a valid consideration, and cannot now be rescinded, directly or indirectly, at the will of one party."

We do not think it necessary to pursue this question further, as we are fully convinced that the parties to this proceeding have full power to enter into a lease for a term of forty years. The third proposition is, therefore, determined for the plaintiff.

The fourth proposition, viz.: Is the rental reserved in the contract under the conditions of this case a *debt* within the meaning of section 8, of article 9, of the Constitution of this State and, therefore, illegal?

We do not think it necessary to quote this section of the Constitution, as it has been construed many times.

Counsel for taxpayers and the Department of Public Instruction strenuously argue that this has been affirmatively decided by the court in City of Erie's Appeal, 91 Pa. 398.

As usual, this case has been cited to sustain both sides of this controversy.

We, however, do not think that said case sustains the claim of counsel for the taxpayers. It is true that the statement on page 402 of that case might leave an inference such as claimed by counsel, but what the court say on page 403 entirely removes such inference by the following language: "When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the 'incurring of indebtedness' within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts. This, we hesitate not to say, is a sound constitutional interpretation, and in a similar case might well be adopted in the construction of our own Constitution. If the contracts and engagements of municipal corporations do not overreach their current revenues, no objection can lawfully be made to them, however great the indebtedness of such municipalities may be; for in such case their engagements do not extend beyond their present means of payment, and no debt is created."

In the instant case, the petition alleges, and the allegation is not denied, that petitioner's current revenues are sufficient to meet the rent reserved and all other annual expenses to which the petitioners would be put. The authority, therefore, cited by counsel to sustain their claim of debt holds just the reverse.

In Wade et al. v. Oakmont Borough et al., 165 Pa. 479, the court, on page 488, say: "An annual sum to be paid monthly for lighting the streets for a limited term is not the incurring of a new indebtedness within the meaning of the Constitution, or of the Act of 1874; and there is no evidence that this contract was framed to evade the inhibitions of either. . . . Therefore, it was not, in any reasonable sense of the words as used in the Constitution, the incurring of the aggregate monthly instalments for the seven years. And, therefore, under the authority of the City of Erie's Appeal, 91 Pa. 398, 403, the contract is not forbidden."

In Reuting et al. v. Titusville, 175 Pa. 512, the court, on page 521, say: "If the contracts and obligations of a municipal corporation do not overreach their current revenues, no legal objection can be made to them, no matter how great the indebtedness of such municipality may be; for in such case their engagements do not extend beyond their present means of payment, and so no debt is created."

In Mellor v. City of Pittsburgh, 201 Pa. 397, in the last paragraph of the syllabus, the court say: "If the contracts and engagements of a school district do not overreach its current revenue, no objection can be made to them, whatever the indebtedness of the district may be."

The case of McKinnon v. Mertz, 225 Pa. 85, has been cited to sustain the objections in the case at bar. In that case the bill in equity was filed to enjoin the carrying out of a contract for the construction of a school building and the bill was sustained. That case, however, differs from the case at bar.

In McKinnon v. Mertz, the school board entered into a contract with the contractor for the erection of a school building to cost $148,970, with a supplemental agreement under which the contractor was to do the work on the building only as funds were legally available for that purpose.

Notwithstanding this supplemental agreement, it was held that the contract price was a debt and that this sum, in addition to other existing indebtedness, created a total debt in excess of 2 per cent. of the assessed valuation and the contract was, therefore, illegal and void.

How any person could conclude that under such a contract no actual indebtedness was created is difficult to understand. Whatever was done as the construction proceeded was done for the school district, and whatever part of the building was constructed belonged to and was the property of the school district. If the building was finished, it then belonged to the school district.

In the case at bar no part of the cost of construction of the building which was to be built by the association was to be paid at any time by the school district. If the building, when nearly completed, would be destroyed by wind or fire, it would, outside of the inconvenience suffered, be no loss whatever to the school district. In fact, no debt whatever upon the school district would be created until the building was completed and possession under a lease delivered to the school district, and then only the annual rental reserved in the lease, which rental would be paid out of current revenues. In fact, under the contract in this case, even after the termination of the period mentioned in the lease, the building would still belong to the corporation which constructed it.

Like McKinnon *v*. Mertz, 225 Pa. 85, are the cases of Brown *v*. City of Corry, 175 Pa. 528, and Lesser *v*. Warren Borough, 237 Pa. 501.

Attention is also called to the case of Hontz *v*. Hollenback Township, 85 Pa. Superior Ct. 281; also, Schilling *v*. Ohio Township, 260 Pa. 113.

Counsel for the objections argue that this case is simply an attempt to evade the constitutional provision against debt. None of the cases cited to sustain such contention has any bearing upon the case at bar. At least, it seems to the court that it is easy to distinguish this case from those mentioned in the citations.

As counsel for the petitioner has well said, the following incidents of the contract now being considered distinguish it from all of the cases where attempts have been made to evade the constitutional inhibitions [against] debt:

1. The contract here is for the leasing of school grounds and building at an annual rental, which rental is provided for by the current funds of the district.

2. There is no provision in the contract for the creating of any indebtedness by the school district, or for the assumption of any debt created by the school association.

3. There is no provision in the contract that the school district shall purchase the property from the school association, neither is there any obligation on the part of the association to sell to the school district.

We might add that at no time would there be any money due and owing until the monthly or annual rental was due. If at any time the school building was destroyed by fire, the school district would only owe for the use of the building up until the time of the fire.

After careful consideration of the argument of counsel and the citations referred to, the court is convinced that the petitioners in this case have a legal right to lease the school building from the association named in this case at an annual rental, providing the rental is paid out of the current revenues of the school district.

The fifth proposition, viz.: Admitting that the incorporation of the Mansfield High School Association, the respondent, was, at the time of the filing of the original petition, an error, would an incorporation of an association of the same name at a later date, and after most of the pleadings had been filed, cure the original defect?

This question was not properly raised in this issue, as it is a collateral attack, and no allegation made that the purpose of the petition is unlawful; but as the plaintiff and respondent admit the facts alleged to be true, we will take judicial notice of the charge and dispose of this collateral attack.

Counsel for plaintiff and respondent argue that as an association was legally created prior to the final hearing, it cured the error for the attempted incorporation, and that such cure dates back to the filing of the original petition. With this contention we cannot agree.

At the time of the filing of the original petition, no corporation such as the respondent existed, and yet the petition alleges such existence. While there are some things that can be done by a *de facto* corporation and be binding upon the parties, yet, when the question of existence is fairly raised, a continuance of the business will be prohibited under proper legal proceedings.

All the pleadings of the plaintiff are amendments to or based upon the original petition; therefore, if the original petition falls, it takes with it all the amendments, as no amendment was made that cured the error of the original petition.

If, after this error was discovered, the plaintiff and respondent would have

asked permission to have the proceedings dismissed or withdrawn, permission would have been granted without prejudice, and, therefore, the final order made in this case will be made without prejudice to the plaintiff or respondent as to future proceedings.

The sixth proposition, viz.: Admitting that the school board had agreed to contract to sell and convey to the respondent a piece of land of the value of at least $1200 for the price and sum of $1, without any conditions or reservations, would such sale be such an abuse of official discretion as to void the contract?

As the court views this matter, this raises the most serious question in these proceedings.

"Schedule A," attached to and made a part of the original petition, contains, *inter alia*, an agreement upon the part of the school board to sell and convey a piece of land, then owned by the school district, to the association, respondent, for the sum of $1; and "Exhibit 2-A," attached to and made a part of the amended petition, contains, *inter alia*, an agreement to sell and convey to the association two pieces of land, then the property of the school district, for the price or sum of $1, "the value of which land is not more than $1200;" said conveyance to be by general warranty deed, free and clear of all liens and encumbrances, and to be delivered to the association as soon as the association is ready to proceed with the financing of its building project. The court is entirely satisfied that no fraud was intended when these resolutions were adopted, but there can be no question but that if said resolutions are put into effect the school board *might* lose title to its property and receive no benefit whatever.

We must not forget that the school board is not dealing with an individual, but with a corporation, and that, because of this, the dealings must be at arm's length.

There is no provision in the resolution or contract compelling a reconveyance of said land to the school board. Suppose, after said deed is delivered, the corporation proceeds to construct the building, finishes it and has it ready for occupancy, but, before being occupied or soon thereafter, the building is destroyed by fire, where would the school district stand?

The contract provides that the school board pay for the insurance, but that, in case of fire, the insurance goes to the corporation to the amount of its indebtedness.

It is a matter of common knowledge that insurance companies do not insure buildings, and especially school buildings, to the full value of the property, and the contract in this case provides that the insurance shall be only 80 per cent. of the value of the building. So, for some years after the building would be constructed, the amount of insurance would not equal the cost or value of the building. During this period all insurance would go to the corporation.

The contract leaves it optional with the association to rebuild or not in case of fire, and there is no provision in the resolution or contract under which the school board could compel a reconveyance of said real estate to the school district in case the corporation, after fire, decided not to rebuild. In such case, if the corporation decided not to rebuild, the school district would be out both the value of the land and the insurance, taxes, etc., paid by it.

It is well known that a school board is rightly clothed with great discretionary power, but when the admitted facts can leave no other conclusion than that the action of the board is clearly and unquestionably wrong and against public interests, such action will be regarded as an abuse of discretionary power and the court should interfere to prevent the action.

The sixth objection is, therefore, sustained.

No good purpose would be subserved by a continuance of this discussion.

Being much interested in the welfare and advancement of the public school, we regret that we feel compelled to refuse to find that the contract set out in and made a part of plaintiff's petition is a legal contract, and that the petition, therefore, must be dismissed.

And now, to wit, Sept. 21, 1926, agreeably to the above and foregoing findings and discussion, the petition filed in this case is dismissed, without prejudice to the petitioner to renew its petition whenever the objectionable provisions are removed. The costs to be paid by the petitioner.

From G. Mason Owlett, Wellsboro, Pa.